UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

EDLY A. ATHERLEY, II,
CDCR #AY-8220,

                                    Plaintiff,

           vs.

SCOTT KERNAN, et al.,

                                    Defendants.

Case No.:  3:19-cv-02355-LAB-KSC

**ORDER:**

**(1) GRANTING MOTION
TO PROCEED IN FORMA PAUPERIS
[ECF No. 2]**

**(2) DENYING MOTION TO APPOINT
COUNSEL
[ECF No. 7]**

**AND**

**(3)  DISMISSING DEFENDANTS
AND CLAIMS PURSUANT
TO 28 U.S.C. § 1915(e)(2) AND
28 U.S.C. § 1915A(b)**

     Plaintiff Edly A. Atherley, II, currently incarcerated at Mule Creek State Prison in Ione, California, and proceeding pro se, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. *See* "Compl.," ECF No. 1 at 1. Plaintiff seeks to sue almost two dozen correctional and appeals officials for allegedly violating his First, Eighth, and Fourteenth Amendment rights while he was incarcerated at Richard J. Donovan Correctional Facility

("RJD") in San Diego, and California State Prison- Los Angeles County ("LAC") from July 2017 through September 2019. *Id.* at 8-20. He seeks $5 million in general and punitive damages, and injunctive relief enjoining "further retaliation," and the "withholding of good-time credits." *Id.* at 22.

Plaintiff has not paid the filing fee required by 28 U.S.C. § 1914(a), but instead filed a Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a), (ECF No. 2), followed by exhibits in support of his Complaint (ECF No. 5), and a Motion to Appoint Counsel (ECF No. 7).

## I.   Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average

---

[1]  In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a copy of his CDCR Inmate Statement Report. *See* ECF No. 2 at 5-7; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. This statement shows Plaintiff carried an average monthly balance of $39.81 and had $49.87 in average monthly deposits credited to his account over the 6-month period immediately preceding the filing of his Complaint. However, Plaintiff had only $.02 to his credit at the time of filing. *See* ECF No. 2 at 6.

Based on this accounting, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2) and assesses no initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1). *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The Court will direct the remaining balance of the $350 total fee owed in this case be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

## II.  Motion to Appoint Counsel

Plaintiff also seeks the appointment of counsel pursuant to 28 U.S.C. § 1915 based on the purported complexity of his claims, his indigence, incarceration, bipolar disorder, hyperthyroidism, limited ability to investigate, and anticipated need to propound

1    discovery and solicit expert testimony. *See* ECF No. 7 at 1-2.

2        However, there is no constitutional right to counsel in a civil case. *Lassiter v. Dept.*
3    *of Social Servs.,* 452 U.S. 18, 25 (1981); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir.
4    2009). And while 28 U.S.C. § 1915(e)(1) grants the district court limited discretion to
5    "request" that an attorney represent an indigent civil litigant, *Agyeman v. Corr. Corp. of*
6    *America*, 390 F.3d 1101, 1103 (9th Cir. 2004), this discretion may be exercised only
7    under "exceptional circumstances." *Id.*; *see also Terrell v. Brewer*, 935 F.2d 1015, 1017
8    (9th Cir. 1991). A finding of exceptional circumstances requires the Court "to consider
9    whether there is a 'likelihood of success on the merits' and whether 'the prisoner is
10   unable to articulate his claims in light of the complexity of the legal issues involved.'"
11   *Harrington v. Scribner,* 785 F.3d 1299, 1309 (9th Cir. 2015) (*quoting Palmer*, 560 F.3d
12   at 970).

13       The Court agrees that pro se litigants may be better served with the assistance of
14   counsel—but that is not the test. *See Rand v. Rowland,* 113 F.3d 1520, 1525 (9th Cir.
15   1997) (affirming denial of counsel based on claims that pro se plaintiff "may well have
16   fared better-particularly in the realms of discovery and the securing of expert
17   testimony."), *withdrawn in part on reh'g en banc and overruled on other grounds*, 154
18   F.3d 952 (9th Cir. 1998). "Concerns regarding investigation and discovery are … not
19   exceptional factors," and while a pro se litigant "may not have vast resources or legal
20   training," these are simply among the commonly shared "types of difficulties encountered
21   by many pro litigants." *Wells v. Washington State Dep't of Corr.*, No. C13-234
22   RJB/KLS, 2013 WL 4009076, at *1 (W.D. Wash. Aug. 5, 2013).

23       As currently pleaded, nothing in Plaintiff's Complaint suggests he is incapable of
24   articulating the factual basis for his retaliation and excessive force claims, which are
25   typical conditions of confinement claims and "relatively straightforward." *Harrington*,
26   785 F.3d at 1309. In fact, the Court finds, based on its initial screening of Plaintiff's
27   Complaint under the standards of review discussed below, that he has pleaded sufficient
28   factual content to state a plausible First and Eighth Amendment claims for relief—at least

with respect to Defendants Hultz, Strong, Jaramillo, and Pamplin. *See Meeks*, 2017 WL 476425 at *3 (denying ADA inmate appointment of counsel where inmate "successfully survived screening," and had submitted motions "drafted with clarity and [asserting] proper arguments."); *Garcia v. Blahnik*, Civil Case No. 3:14-cv-00875-LAB-BGS, 2016 WL 4269561, at *3 (S.D. Cal. Aug. 15, 2016) (finding no "exceptional circumstances warranting a judicial request for a voluntary legal counsel" where Plaintiff's psychiatric disorder and limited access to the law library did not "prevent[] him from filing a well-articulated complaint and other motions with the Court.").

In addition, while Plaintiff may have sufficiently *pleaded* retaliation and excessive force claims against Defendants Hultz, Strong, Jaramillo, and Pamplin at this preliminary stage of the proceedings, he has yet to demonstrate and it is too soon to tell whether there is a likelihood he will succeed on the merits. *Harrington*, 785 F.3d at 1309; *Cano v. Taylor*, 739 F.3d 1214, 1218 (9th Cir. 2014) (affirming denial of counsel where prisoner could articulate his claims in light of the complexity of the issues involved, but did not show likelihood of succeed on the merits); *see also Dickey v. Strayhorn*, Civil Case No. 3:17-cv-00546-JLS-JLB, 2017 WL 3118797, at *1 (S.D. Cal. July 21, 2017), *reconsideration denied,* Civil Case No. 3:17-cv-00546-JLS-JLB, 2017 WL 4271975 at *1 (S.D. Cal. Sept. 26, 2017) ("To demonstrate that he has a likelihood of success at trial, Plaintiff must do more than merely allege that one of his constitutional rights was violated. He must provide evidence to the effect that he has a likelihood of success on the merits of his allegations."); *Torbert v. Gore,* Civil Case No. 3:14-cv-02991-BEN-NLS, 2016 WL 1399230, at *1 (S.D. Cal. Apr. 8, 2016) ("A plaintiff that provides no evidence of his likelihood of success at trial fails to satisfy the first factor of the [exceptional circumstances] test.").

Therefore, the Court finds no "exceptional circumstances" exist at this preliminary stage of the case and **DENIES** Plaintiff's Motion to Appoint Counsel (ECF No. 7) without prejudice on that basis.

///

### III.   Initial Screening per 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)

#### A.   **Standard of Review**

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Finally, while a plaintiff's factual allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc*., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Indeed, while courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Even before *Iqbal*, "[v]ague and conclusory allegations of official participation in civil rights violations" were not "sufficient to withstand a motion to dismiss." *Id.*

## B.   <u>Plaintiff's Allegations</u>

Plaintiff lists 22 separate Defendants and identifies his constitutional right to free speech, access to the courts, and petition for redress (Count 1), to be free from cruel and unusual punishment (Count 2), and his right to due process (Count 3), as the bases for various claims which are alleged to have arisen at two different prisons over the course of two years. *See* Compl. at 1-7, 8, 19, 20. Plaintiff does not clearly specify which Defendant is being sued for which wrong. Instead, he simply identifies each Defendant by his or her job title, *id.* at 2-7, sets out a chronology of "background" facts under Count 1, *id.* at 8-18, and realleges and incorporates those same facts by reference with respect to Counts 2 and 3. *Id.* at 19, 20. Plaintiff also refers to several hundred pages of exhibits, which he has filed separately in support of his claims. *See* ECF No. 5.[2]

*///*

---

[2]  While "it is not the Court's duty," when screening a complaint pursuant to 28 U.S.C. § 1915(e) and § 1915A "to wade through exhibits to determine whether cognizable claims have been stated," *Woodrow v. Cty. of Merced*, No. 1:13–cv–01505–AWI, 2015 WL 164427, at *4 (E.D. Cal. Jan 13, 2015), the Court will consider specific exhibits when Plaintiff identifies them as relevant to his claims. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (reaffirming liberal construction of pro se pleadings after *Iqbal*).

*1.    RJD Defendants & Claims*

On July 12, 2017, while he was incarcerated at RJD and assigned to the Sensitive Needs Yard due to his lack of criminal sophistication and bipolar disorder, Plaintiff complained to an unidentified staff member about "partial, unfair and discriminatory practices" he observed in the canteen. *See* Compl. at 8. Correctional Officer M. Hultz responded and "incite[d] the crowd … by saying that no person w[ould] be able to shop because of Plaintiff." *Id.* When Plaintiff sat and started taking notes at a nearby table, Hultz "retrieve[d] Plaintiff's identification card," threw it into the dirt "in open display of contempt," "continue[d] his threat[s] … by gesturing at Plaintiff in a manner likely to incite or promote violence," and "glared at [him] while spitting sunflower seeds." *Id.* When Plaintiff complained to Hultz's supervisor, Sgt. Marientes, Marientes "declare[d] his indifference," by giving Hultz a "high five." *Id.* at 9.

Plaintiff then asked Officer T. Yap to sign two CDCR Form 22s addressed to Cpt. E. Garza to report Hultz and Marientes' misconduct.[3] Yap signed the CDCR Form 22 regarding Hultz and submitted it using institutional mail, but he refused to sign the Form 22 regarding Marientes. Plaintiff alleges Yap did so because he feared retaliation, and advised him to ask a "cool sergeant" to sign the Form 22 instead. *Id.* at 9.

---

[3] Officer Yap is not named as a Defendant. *See* Compl. at 1-7. Title 15 of the California Code of Regulations provide that "[i]nmates and parolees may request interviews with staff and/or request items and services via a written request process," pursuant to a "CDCR Form 22 (10/09), Inmate/Parolee Request for Interview, Item or Service." 15 Cal. Code Regs. § 3086(a), (c). "These forms are to 'be made readily available' throughout the prison." *Green v. Dir./Sec'y, California Dep't of Corr. & Rehab.*, No. 3:14-CV-00965-LAB-BGS, 2016 WL 3647182, at *9 (S.D. Cal. June 10, 2016), *report and recommendation adopted*, No. 3:14-CV-00965-LAB-BGS, 2016 WL 3551974 (S.D. Cal. June 30, 2016) (citing § 3086(c)). "A Form 22 is intended to facilitate the 'timely resolution of routine matters through an effective and non-conflictive communication process,' pursuant to which 'Department staff shall attempt to resolve inmate and parolee issues expeditiously.'" *Id.* (citing § 3086(a)). Plaintiff includes the CDCR Form 22 he submitted to Yap on July 12, 2017 as part of the CDCR 602 Inmate/Parolee Appeal Log No. RJD-17-05116 records he filed at Exhibit 13. *See* ECF No. 5 at 98. Captain E. Garza responded to this CDCR Form 22 on July 17, 2017,, indicating Plaintiff would be interviewed by a staff member in ASU due to his "involve[ment] in an incident with Officer Hultz." *Id.*

Two days later, on July 14, 2017, Plaintiff claims Officer Crespo pointed him out to Hultz in the breakfast dining hall. Hultz asked Plaintiff, "Where's my write up? I'm waiting to sign it." *Id.* After Plaintiff handed his Form 22 to Hultz, he claims Hultz "became angry," put the Form 22 in his pocket, and told Plaintiff he had 72 hours to review it. *Id.* When Plaintiff asked Crespo to confirm that Hultz was required to sign a copy "immediately for [his] records," Crespo directed Plaintiff to "eat first," and that she'd "get it back for [him]." *Id.* at 10. Plaintiff claims he then observed both Crespo and Hultz reading the Form 22 before Hultz again returned it to his pocket. When Plaintiff again requested Hultz return the Form 22, so "someone else [could] sign it," Hultz refused.[4] *Id.*

Plaintiff then claims he "calmly remove[d] [a] pen and index card in order to note another adverse interaction," when Hultz "violently hit [his] hands" to prevent him from writing. *Id.* Plaintiff claims he asked Crespo for her "legally obligated assistance," but Crespo "did not intervene." *Id.*

As Plaintiff bent down to retrieve his card and pen, Hultz grabbed him by the back of the shirt and squeezed his throat with his right hand, "obstructing [his] breathing." *Id.* Plaintiff claims he was "in fear for his life, [but] recognize[d] Hultz w[ould] attempt to justify the unauthorized use of deadly force if [he] attempt[ed] to move Hultz's hand." *Id.* "Hultz then violently slam[med] Plaintiff into a concrete wall," which caused a "2″ laceration to [his] right elbow." *Id.* Plaintiff further contends that as "he intentionally prevent[ed] Plaintiff from complying, Hultz, for the first time, ordered [him] to cuff up," then "maliciously body slam[med] him to the ground." *Id.* Plaintiff claims he was then "beaten by Officer B. Strong [] and Officer B. Jaramillo." *Id.* at 11. Jaramillo "repeatedly

---

[4] In a CDCR Form 22 dated July 12, 2017, and captioned by Plaintiff as "employee conduct," he reported that Sgt. Marientes was informed of "the misconduct of his officer," stated he "didn't care," directed Plaintiff to "put it in the 602," and later "congratulat[ed]" him by saying "Good job." This Form 22 is signed and dated by both Hultz and Capt. Garza on July 14, 2017. *See* Pl.'s Ex. 13, ECF No. 5 at 99. Garza response informed Plaintiff that "Form 22's are not meant to be utilized to report staff misconduct," and that if the Supervisor's response was "not to [his] satisfaction, a 602 would be appropriate." *Id.*

slam[med] [his] head into the ground" as Plaintiff "lay prone with his hands cuffed behind his back." *Id.* Plaintiff claims when he cried out to Officer Joyner[5] for help, Hultz "cover[ed] [his] mouth." *Id.*

During his escort to the gym by Officers Strong and P. Pamplin, Plaintiff claims Pamplin tightened his cuffs "to restrict the flow of blood to [his] arms," and both officers "interlocked their arms through Plaintiff's" and "applied pressure" to his shoulder in order to "mak[e] [him] walk." *Id.* When Plaintiff asked to walk on his own, he claims Strong threatened to "drop" him and beat him instead. *Id.* Plaintiff "repeatedly explained" that he had been attacked "without provocation because he submitted staff complaints," but Pamplin and Strong responded by "slamming [him] into a glass window," tightening his cuffs, and "throwing [him] into a 2′ x 2′ single-person cage." *Id.* Once inside, Plaintiff asked if his restraints could be removed because his treatment was "unethical and unjust," but Strong replied, "I can't hear you Martin Luther King cuz [sic] I'm just a dumb white boy … [W]hat's justice?" *Id.*

About 45 minutes later, Plaintiff was examined by Licensed Vocation Nurse Letuligasenca,[6] who asked Strong to removed Plaintiff's restraints so that he could administer his anti-depressant medication and document his injuries on a CDCR Form 7219.[7] *Id.* at 12.

Plaintiff claims that while he remained alone in the gym, Officer Crespo "apologized for her inability to help him," and provided Plaintiff "insight into the story that Hultz was going to concoct to conceal his unnecessary use of force." *Id.* Plaintiff claims he also spoke with the responding supervisor, Sgt. Cottrell, and "unequivocally expressed" that he had been attacked by officers "because he filed a grievance two days

---

[5] Officer Joyner is not named as a party.

[6] LVN Letuligesenca is not named as a party.

[7] *See* Pl.'s Ex. 6, ECF No. 5 at 13.

3:19-cv-02355-LAB-KSC

prior." *Id.* But Plaintiff claims Cottrell "refused to commence [an] appropriate investigation," and he was "erroneously charged with battery" and sent to the Administrative Segregation Unit (ASU).[8] *Id.*

On or around July 16, 2017, while he was in ASU, Plaintiff claims an unidentified sergeant responded to the "initial misconduct complaint," but refused to take Plaintiff's statement. *Id.* at 12-13. On or around July 18, 2017, Plaintiff claims Cpt. Garza informed him of a pending Classification Committee Review hearing.[9] *Id.* at 13. Plaintiff claims he gave a statement that Garza declined to document and requested a polygraph exam. *Id.*

On July 20, 2017, Plaintiff claims to have appeared before the Committee, and to have informed an unidentified Captain of his willingness to undergo a polygraph examination. The Captain ordered Lt. Luna to "review Plaintiff's statements," and Luna then ordered an unidentified Psychiatric Technician ("PT") to "conduct an injury report." *Id.* During that exam, Plaintiff contends Luna "explicitly ordered" the PT to document his cuff burns as "old scars." *Id.*

Plaintiff was then taken to an office by Luna and Sgt. Fink. There, he claims Luna told him his injuries would be recorded, but threatened that if he "tr[ied] to say any[thing]" that contradicted the injury report, he would "stop this shit." *Id.* Specifically, Plaintiff claims Luna "continued to angrily insist and intimidate [him]," mischaracterized his account of the use of force, ordered Fink to stop recording and told him: "You're

---

[8] CDCR Rules Violation Report ("RVR") Log No. 2992331, dated July 14, 2017, and charging Plaintiff with battery on a peace officer (Hultz) in violation of Cal. Code Regs., tit. 15 § 3005(d)(1), an RVR Supplemental Report, and Plaintiff's Aug. 13, 2107 Disciplinary Hearing Results are filed together as Plaintiff's Ex. 10. *See* ECF No. 5 at 26-41. Hultz is identified as the Reporting Employee, Sgt. K. Cottrell is identified as the Reviewing Supervisor, and Correctional Officer E. Garza is identified as the official who classified Plaintiff's offense level as serious. *Id.* at 27-28.

[9] "Any serious disciplinary action requiring reconsideration of an inmate's program, work group, or housing assignment, shall be referred to the next reasonably scheduled classification committee for review." Cal. Code Regs., tit. 15 § 3315(g); *Armenta v. Paramo*, No. 3:16-CV-02931-BTM-KSC, 2018 WL 4612662, at *3 n.6 (S.D. Cal. Sept. 25, 2018).

done. You said you got your injuries because Hultz threw your ID in the dirt." *Id.* at 14.

On July 24, 2017, Plaintiff claims to have filed a "Form 602" and to have "personally" handed it to Officer C. Aliva,[10] who was "acting as [his] Investigative Employee (IE)"[11] *Id.* Plaintiff claims Aliva's "job [was] to gather information for the Senior Hearing Officer (SHO)" who would preside over his disciplinary hearing.[12] *Id.* Plaintiff claims Aliva "specifically refused to call Officer Crespo as a witness." *Id.*[13]

On or around July 31, 2017, Plaintiff was transferred from RJD to LAC. *Id.* at 15. On August 13, 2017, Lt. B. Legier found him guilty of battery on a peace officer (Hultz) in violation of Cal. Code Regs., tit. 15 § 3005(d)(1) as charged in RVR Log No. 2992331, and based on the "quantity of officer statements against him." *Id.* Plaintiff claims Legier "refuse[d] to document [his] statement" during the August 13, 2017 hearing, and failed to acknowledge that "cover ups … happen in the year 2017." *Id.*[14] Plaintiff also claims he

---

[10]  Plaintiff identifies this Defendant as C. Aliva, but the Court notes his exhibits identify Correctional Officer C. *Avila* as the IE. *See* Pl.'s Ex. 10, ECF No. 5 at 32.

[11]  Plaintiff identifies "Exhibit 7" as his CDCR Form 602, but that exhibit is not a CDCR 602 Inmate/Appeal Form. *See* ECF No. 5 at 15. Instead, the document Plaintiff refers to is a single handwritten page he entitled "Employee Misconduct" in which recounts his July 12 and July 14 encounters with Officers Hultz, Crespo, Pamplin, and Strong. *Id.*

[12] Plaintiff does not specifically identify Lt. B. Legier as the SHO in the body of his Complaint, but he does claim Legier reviewed the evidence and found him guilty of battery on a peace officer (Hultz) with respect to RVR Log. No. 2992331. *See* Compl. at 15; Pl.'s Ex. 10, ECF No. 5 at 37. Plaintiff's Exhibit 10 also identifies Legier as the August 13, 2017 "Hearing Official." *Id.* at 40.

[13] Avila's RVR Supplemental Report dated August 8, 2017 confirms Avila conducted an IE Interview with Plaintiff in the ASU on July 24, 2017. *See* Pl.'s Ex. 10, ECF No. 5 at 31. Avila's Report indicates Plaintiff requested that Avila pose questions to Sgt. Fink and an inmate named Harvey; but also indicates Plaintiff did *not* request any staff or inmate witnesses, reporting employee, or investigative employees appear as witnesses. *Id.* at 31-32, 37.

[14] However, the August 13, 2017 RVR Log No. 2992331 findings Plaintiff submitted as Exhibit 10 show that when he pleaded not guilty he entered a statement "that he did not Battery [sic] the officer and that this all took place because of retaliation from a Staff Complaint he filed (2) days before this incident on July 12, 2017" against Officer M. Hultz. *See* Pl.'s Ex. 10, ECF No. 5 at 37.

"was sentenced to six months in isolation," and had "the same time added to his overall sentence" due to Legier's guilt determination. *See* Compl. at 15. However, RVR Log No. 2992331's Disposition Findings, which "affirm[ed] the hearing results," and were reviewed and entered by Chief Disciplinary Officer ("CDO") T. Lewandowski on September 7, 2017, indicate Plaintiff was referred to a Classification Committee for a SHU Term Assessment, advised of a 150-day non-restorable credit forfeiture, and assessed a 90-day loss of Privilege Group C, canteen, phone, day room, and package privileges. *See* Pl.'s Ex. 10, ECF No. 5 at 39-41.[15] Lewandowski is not named as a Defendant. *See* Compl. at 1-7.

On August 17, 2017, Plaintiff claims to have been interviewed via videotape while in the ASU at LAC by Lt. B. Perez and Sgt. T. Smith "at the request of RJD Lt. L. Ortiz" in order to enter "supplemental evidence" into the record "for RVR Log. No. #299331." *Id.* at 15-16; *see also* Pl.'s Ex. 11, ECF No. 5 at 43.[16]

Between August and November 2017, Plaintiff submitted several letters to the CDCR's Office of Internal Affairs ("OIA"), Division of Adult Institutions, and Office of Correctional Safety reporting Hultz and Marientes's alleged misconduct, complaining he had been falsely charged and retaliated against, and demanding a polygraph examination. *See* Compl. at 16, Pl.'s Ex. 12, ECF No. 5 at 45-49. His exhibits show these letters were routed to RJD's Warden, Defendant Daniel Paramo, who responded twice on October 23, 2017, and again on November 8, 2017. *Id.* at 46, 48-49. Both times Paramo directed Plaintiff to raise and properly pursue his claims via the CDCR 602 Inmate/Parolee appeals process. *Id.* at 46, 48-49. Paramo further notified Plaintiff that all reported

---

[15] Plaintiff's Second Level Disciplinary Appeal Response to CDCR 602 Inmate Parolee Log No. RJD-X-17-5116, dated November 8, 2017, indicates he was "issued a Final copy of the disciplinary hearing results affirmed by the Chief Disciplinary Officer (CDO) on September 8, 2017. *See* Pl.'s Ex. 13, ECF No. 5 at 60.

[16] While RJD Lt. L. Ortiz is named as a Defendant, neither Perez nor Smith are identified as parties. *See* Compl. at 1-7.

incidents of force were subject to review by an Institutional Executive Review Committee ("IERC"), and that the IERC had reviewed Officer Hultz's actions and "determined th[e] incident require[d] no further review." *Id.* at 48. Plaintiff also claims to have "personally informed" and to have solicited the assistance of former CDCR Secretary Scott Kernan after he saw Kernan's "interview on 60 Minutes with Oprah Winfrey," but Kernan "refused to aid[] [him]." *See* Compl. at 16.

### 2.    *LAC Defendants & Claims*

The remainder of Plaintiff's claims, alleged to have occurred at LAC beginning in late December 2017, and continuing through September 2019, include subsequent acts of retaliation, intimidation, harassment, mail interference, transfer to a "suicide bed" and "false disciplinary write-ups." These incidents involve LAC officials Puentes, Mebane (also spelled Mayben), Handle, Lumas, and Kashchuck.[17] *See* Compl. at 16-18.

### C.    42 U.S.C. § 1983

Section 1983 is a "vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

///

---

[17] Of these LAC officials, only Puentes and Mebane are named as Defendants in this case. *See* Compl. at 1-7. Plaintiff *does* name several other LAC officials—Warden Asuncion, and Correctional Officers Nkoocha and Thompson as parties, *see* Compl. at 7; but nowhere does he explain what these LAC officials did, or how they injured him. The same is true for RJD Defendants Olivarria and Self, whom Plaintiff simply lists as Defendants and identifies as Appeals Coordinators. *Id.* at 6. *See Iqbal*, 556 U.S. at 678 (noting that while Rule 8's pleading standards "do[] not require 'detailed factual allegations,' … [they] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (quoting *Twombly*, 560 U.S. at 555).

### D.   Individual Liability

As an initial matter, the Court's finds Plaintiff's Complaint fails to include sufficient factual content to establish individual liability on the part of the supervisory officials he seeks to sue. For example, Plaintiff names Wardens Paramo and Ascuncion, as well as CDCR Secretary Kernan as parties, identifies them by their job titles, and contends they are "legally responsible" either for the "welfare of all the inmates" in RJD and LAC, and for "overall Department operations." *See* Compl. at 3. With respect to Warden Paramo and Secretary Kernan, Plaintiff further alleges only that they were aware of the July 14, 2017 incident and the disciplinary proceedings that followed. *See* Compl. at 16. With respect to LAC Warden Asuncion, however, Plaintiff alleges no knowledge or involvement whatsoever. "[A] defendant may not be held liable under § 1983 merely because he had certain job responsibilities." *Hernandez v. Aranas*, No. 2:18-CV-00102-JAD-BNW, 2020 WL 569347, at *4 (D. Nev. Feb. 4, 2020) (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).

Without "further factual enhancement" to show how, or to what extent, Defendants Paramo, Kernan, or Asuncion may be held personally liable for any constitutional injury, the Court finds Plaintiff's claims against them must necessarily rest on a theory of respondeat superior. *See Iqbal*, 556 U.S. at 676-77. But "[v]icarious liability is inapplicable to ... § 1983 suits, [and] a plaintiff must plead that each Government-official defendant, through [his] own individual actions, has violated the Constitution," in order to plead a plausible claim for relief. *Id*. at 676; *see also Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (supervisor may be held liable under Section 1983 only if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation") (citations and internal quotation marks omitted); *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979) (when a named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged); *Victoria v. City of San Diego*, 326 F. Supp. 3d 1003, 1013 (S.D. Cal. 2018) ("Liability under § 1983 arises only upon a

showing of personal participation by the defendant."); *Jones v. Comm'ty Redev. Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim).

For these reasons, the Court finds Plaintiff has failed to state a plausible claim for relief against Defendants Paramo, Kernan, and Asuncion pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b); *Lopez*, 203 F.3d at 1126-27; *Wilhelm*, 680 F.3d at 1121.

## E.   **RJD Due Process Claims** ("Count 3")

### 1.   *Disciplinary Investigation and Proceedings*

In Count 3, Plaintiff asserts a violation of his Fourteenth Amendment right to "due process," *see* Compl. at 20, which the Court will assume is alleged with respect to the disciplinary investigation undertaken with respect to RVR Log. No. 2992331, dated July 14, 2017, the various CDCR Form 22s and CDCR 602 Inmate Appeals and "employee misconduct" claims Plaintiff submitted regarding the July 12 through July 14, 2017 incidents, *id.* at 9-10, 14, and his August 13, 2017 disciplinary conviction for battery on a peace officer in violation of Cal. Code Regs., tit. 15 § 3005(d). *Id.* at 15-16; *see also* Pl.'s Ex. 10, ECF No. 5 at 27-41.

The Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

///

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* These procedural protections, however, "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Although the level of the hardship must be determined on a case-by-case basis, and "[i]n *Sandin's* wake the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system," *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), courts in the Ninth Circuit look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013). Only if the prisoner alleges facts sufficient to show a protected liberty interest must courts next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez*, 334 F.3d at 860.

Plaintiff's due process claims with respect to the investigation and procedures employed as the result of RVR Log. No. 2992331, as best the Court can tell, involve Defendants Cottrell, Garza, Luna, Fink, Aliva, Legier, and Ortiz. Specifically, Plaintiff alleges Sgt. Cottrell refused to initiate an "appropriate investigation" into the July 14, 2017 incident, and "erroneously" charged him with battery on Hultz. *See* Compl. at 12.

Plaintiff claims Cpt. Garza then "declined to document" a statement Plaintiff made to him on July 16, 2017, *id.* at 12–13, and Lt. Luna and Sgt. Fink allegedly recorded his injuries and claims on July 20, 2017, but "intimidate[d]" him while doing so, and "mischaracterized" his version of the events when reporting them. *Id.* at 14. Officer Aliva is alleged to have been assigned to gather information as Plaintiff's IE, but "refused to call Officer Crespo as a witness." *Id.* Lt. Legier is similarly alleged to have refused to document a statement Plaintiff claims to have made during the August 13, 2017 disciplinary hearing, to have rejected his claims of a "cover up," and to have wrongly concluded Plaintiff was guilty based only on "the quantity of officer statements against him." *Id.* at 14–15. Finally, Plaintiff implicates Lt. Ortiz, but alleges only that he requested Plaintiff be interviewed at LAC via videotape in order to provide "supplemental evidence" on August 17, 2017.[18] *Id.* at 15–16. But none of these acts or omissions, or reasonable inferences that may be drawn from them, are sufficient to support a viable due process claim. *Iqbal*, 556 U.S. at 678.

First, to the extent Plaintiff suggests RVR Log No. 2992331 was based on lies "concoct[ed] to conceal" the use of "unnecessary force" and issued simply to "cover up" wrongdoing, *see* Compl. at 12, 14–15, "[t]he issuance of a false RVR, alone, does not state a claim under section 1983." *Murschel v. Paramo*, 2018 WL 539159, at *5 (S.D. Cal. 2018) (citing *Dawson v. Beard*, 2016 WL 1137029, at *5-6 (E.D. Cal. 2016)). Instead, claims of arbitrary action by prison officials must grounded in "'the procedural due process requirements as set forth in *Wolff v. McDonnell*.'" *Id.* (citing *Ellis v. Foulk*, 2014 WL 4676530, at *2 (E.D. Cal. 2014) (quoting *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984))). "[T]here is no due process right to be free from false disciplinary

---

[18] Plaintiff also claims Ortiz "later dispositioned [his] appeal [Exhibit 11] in violation of CDCR rules." Compl. at 16. But Exhibit 11 is not a CDCR 602 Inmate/Parolee Appeal Form. Instead it appears to be the CDCR Form 22 Plaintiff submitted to LAC's Sgt. Smith on or about December 3, 2017, and requesting confirmation that his August 17, 2017 video–recorded interview "as 'supplemental' for RVR #2992331" was sent to "Lt. E. Ortiz @ RJD." *See* Pl.'s Ex. 11, ECF No. 5 at 43.

charges," *Solomon v. Meyer*, 2014 WL 294576, at *2 (N.D. Cal. 2014), because "[t]he Constitution demands due process, not error-free decision-making." *Chavira v. Rankin*, 2012 WL 5914913, at *1 (N.D. Cal. 2012); *see also Johnson v. Felker*, 2013 WL 6243280, at *6 (E.D. Cal. 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under section 1983.") (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) and *Freeman v. Rideout*, 808 F.2d 949, 951-53 (2d Cir. 1986)).

Second, Plaintiff's due process claims require *sua sponte* dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) because he fails to allege facts sufficient to show that the deprivations he suffered as a result of his disciplinary conviction, *i.e.*, lost custody credit, a referral to Classification Committee, and the loss of 90 days of canteen, phone, dayroom, and package privileges, *see* Pl.'s Ex. 10, ECF No. 5 at 39–41, imposed the type of "atypical and significant hardships" required by *Sandin* to invoke any liberty interest entitled to *Wolff's* procedural protections.

Classification at a higher custody level, for example, does not by itself place an "atypical or significant hardship" on an inmate sufficient to give rise to a protected liberty interest. *See Sandin*, 515 U.S. at 486 (placing an inmate in administrative segregation for thirty days "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (finding no "atypical and significant deprivation" where prisoner failed to allege conditions at level IV prison differed significantly from those at a level III prison); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (inmates do not have a liberty interest in their classification status); *Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1985) (prison authorities may change a prisoner's "place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another" without violating due process).

///

The other lost privileges Plaintiff cites as a result of his disciplinary conviction, including 90-day placement in "Privilege Group C" and attendant limitations on his canteen, phone, day room, and package privileges, *see* Compl. at 15, Pl.'s Ex. 10, ECF No. 5 at 39–41, also do not constitute "atypical and significant" hardships. *See Sandin,* 515 U.S. at 484; Cal. Code Regs., tit. 15 § 3044(f)(2) (describing "Privilege Group C" "privileges and non-privileges"); *see also Sanchez v. Miller*, 2016 WL 536890, at *5 (S.D. Cal. 2016) ("C-status deprivations were limited in duration and type, and these limited deprivations do not constitute a hardship that is atypical and significant 'in relation to the ordinary incidents of prison life.'"), *report and recommendation adopted,* 2016 WL 524438 (S.D. Cal. 2016); *Randle v. Melendrez*, 2017 WL 1197864, at *4 (C.D. Cal. 2017) (finding "four months in administrative segregation as a result of the false RVR," during which plaintiff was deprived of contact visits, "packages, canteen, unrestricted yard, phone calls and personal property" insufficient to implicate a protected liberty interest under *Sandin*), *report and recommendation adopted*, 2017 WL 1199719 (C.D. Cal. 2017); *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) ("[A] prisoner has no constitutional right to a particular classification status"); *Wyatt v. Swearingen*, 2010 WL 135322, at *8-9 (N.D. Cal. 2010) (no liberty interest in prisoner's year-long C-status placement); *Washington v. Cal. Dep't of Corrs. & Rehab.*, 2010 WL 729935, at *1 (E.D. Cal. 2010) (no liberty interest in delayed release from C-status); *see also Steffey v. Orman*, 461 F.3d 1218 (10th Cir. 2006) (restriction on inmates' ability to receive money from outside sources was not an "atypical or significant hardship" under *Sandin*).

For these reasons, the Court finds Plaintiff has failed to state a plausible due process claim as to any Defendant with respect to the issuance of RVR Log No. 2992331, the investigation and hearing which followed, or his August 13, 2017 disciplinary conviction and sentence for battery on a peace officer in violation of Cal. Code Regs., tit. 15 § 3005(d)(1). *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Watison,* 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### 2. *Heck* Bar

Even if Plaintiff could allege facts sufficient to plausibly show Defendants Cottrell, Garza, Luna, Fink, Aliva, Legier, or Ortiz violated his due process rights with respect to his RVR and disciplinary conviction, his claims as currently alleged present yet another procedural hurdle.

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for writ of habeas corpus, 28 U.S.C. § 2254, and a complaint under ... 42 U.S.C. § 1983." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Id.* (internal citation omitted). A prisoner's claims are within the core of habeas corpus if they challenge the fact or duration of his conviction or sentence. *Nettles v. Grounds*, 830 F.3d 922, 934 (9th Cir. 2016) (en banc), *cert. denied*, 137 S. Ct. 645 (2017); *Ramirez v. Galaza*, 334 F.3d 850, 858 (9th Cir. 2003).

In *Heck v. Humphrey*, the United States Supreme Court held that a section 1983 claim cannot proceed when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 486-87. Accordingly, "a state prisoner's [section] 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). *Heck* requires the plaintiff in a § 1983 action "first … to prove that his conviction had been invalidated in some way." *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (citing *Heck*, 512 U.S. at 486). "This favorable-termination requirement, the Court explained, applies whenever 'a judgment in favor of the plaintiff would necessarily imply' that his prior conviction or sentence was invalid." *Id.* (quoting *Heck*, 512 U.S. at 487).

*Heck*'s bar applies in the prison disciplinary context if the "defect complained of by [Plaintiff] would, if established, necessarily imply the invalidity of the deprivation of [his] good-time credits[,]" *Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Nonnette v. Small*, 316 F.3d 872, 875 (9th Cir. 2002), and if the restoration of those credits "necessarily" would "affect the duration of time to be served." *Muhammed*, 540 U.S. at 754; *see also Nettles*, 830 F.3d at 929 n.4 ("*Heck* applies only to administrative determinations that 'necessarily' have an effect on 'the duration of time to be served.' " (citations omitted)); *Ramirez*, 334 F.3d at 856 ("[T]he applicability of [*Heck*'s] favorable termination rule turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement.").

Here, a judgment in Plaintiff's favor would necessarily imply the invalidity of his disciplinary conviction and his subsequent credit loss—at least insofar as he contends the charges against him were completely false and concocted to cover up Officer's Hultz's initial misconduct. If, as Plaintiff claims, exculpatory evidence gathered "was deliberately suppressed as to ensure it would be unavailable," and this "preclude[d] Plaintiff from defending himself" and resulted in "time added to his overall sentence," Compl. at 14–15, the disciplinary conviction he sustained as a result of RVR Log No. 2992331 could not stand. *See Edwards*, 520 U.S. at 648 (finding prisoner's claims for declaratory relief and money damages "based on allegations of deceit and bias on the part of the decisionmaker … necessarily imply the invalidity of the punishment imposed, [and are] not cognizable under § 1983."). "The due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence." *Id.* at 647; *see also Luster v. Amezcua*, 2019 WL 1442992, at *7-8 (E.D. Cal. Apr. 1, 2019) (finding prisoner's § 1983 claims barred by *Heck* to the extent they were based on allegations that prison officials "made a false report against her.").

Therefore, should Plaintiff chose to amend the due process claims contained in his Complaint, he must not only address the Fourteenth Amendment pleading deficiencies identified above, but also allege that his disciplinary conviction for battery on a peace officer pursuant to RVR Log No. 299331 has already been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487.

### 3.    CDCR Inmate Appeals

Plaintiff also names RJD Appeals Coordinators Olivarria and Self as Defendants, *see* Compl. at 6, and he has submitted hundreds of pages exhibits which include copies of, or reference to, at least 12 separate CDCR 602 Inmate/Parolee Appeals, Staff Complaints, and Health Care Appeals he either filed or attempted to file at RJD, LAC and High Desert State Prison between August 2017 and July 2018. *See* Pl.'s Exs. 13–20, ECF No. 5 at 50–303. But his Complaint offers no "further factual enhancement" to show how, or to what extent Olivarria or Self played any role with respect to a specific appeal or how they may have caused any constitutional injury. *See Iqbal*, 556 U.S. at 676-77.

To the extent Plaintiff may seek to hold Olivarria or Self responsible for improperly processing or denying any particular grievance or appeal, this cannot serve as an independent basis for section 1983 liability. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted); *McRoy v. Roe*, 509 Fed. Appx. 660, 660 (9th Cir. 2013) (affirming dismissal of claims arising from defendants' processing of grievances); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (due process not violated simply because defendant fails properly to process grievances submitted for consideration); *see also Todd v. California Department of Corrections and Rehabilitation*, 615 Fed. Appx. 415, 415 (9th Cir. 2015) (district court properly dismissed claim based on improper "processing and handling of [...] prison grievances," since prisoners have no "constitutional entitlement to a specific prison grievance procedure")

3:19-cv-02355-LAB-KSC

(citing *Ramirez*, 334 F.3d at 860) (quotation marks omitted); *Shallowhorn v. Molina*, 572 Fed. Appx. 545, 547 (9th Cir. 2014) (district court properly dismissed section 1983 claims against defendants who "were only involved in the appeals process") (citing *Ramirez*, 334 F.3d at 860); *Daniels v. Aguilera*, 2018 WL 558658, at *1 (E.D. Cal. Jan. 24, 2018), *report and recommendation adopted sub nom. Daniels v. Aguillera*, 2018 WL 1763311 (E.D. Cal. Apr. 12, 2018) ("Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process prison grievances."). Simply "'[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation.'" *Ellington v. Clark*, 2010 WL 3001427, at *2 (E.D. Cal. Jul. 29, 2010) (quoting *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)).

For these reasons, Plaintiff also fails to any plausible due process claim against Defendants Olivarria and Self. *See Iqbal*, 556 U.S. at 678-79 (citations omitted); *Valdivia v. Tampkins*, 2016 WL 7378887, at *6 (C.D. Cal. Dec. 19, 2016) (sua sponte dismissing claims predicated upon the alleged improper processing of inmate grievances); 28 U.S.C. §§ 1915(e)(2)(b)(ii), 1915A(b)(1); *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

## F.   RJD Retaliation & Excessive Force Claims ("Counts 1 & 2")

In Counts 1 and 2, Plaintiff claims a violation of his First Amendment rights to free speech and to petition for redress, and his Eighth Amendment right to be free from cruel and unusual punishment. *See* Compl. at 8, 18–19. Specifically, Plaintiff claims that on July 12, 2017, Defendant Hultz "display[ed] contempt" by throwing his ID in the dirt after he raised "concerns" regarding canteen practices and began "taking notes." *Id.* at 8. Plaintiff immediately reported Hultz to his direct supervisor, Sgt. Marientes, and complained to Officer Crespo, but to no avail. *Id.* at 9, 10.

Two days later, on July 14, 2017, Plaintiff presented Hultz with a CDCR Form 22 which he describes as an "employee misconduct complaint." *Id.* at 9. Plaintiff contends Hultz "became angry" after reading the CDCR Form 22, "violently hit [his] hands" in order to "prevent him from writing" and "reporting another adverse action," and then

proceeded to choke, beat, and threaten him with the assistance of Officers Strong, Jaramillo, and Pamplin. *Id.* at 10–12. Plaintiff contends Defendants Hultz, Strong, Jaramillo and Pamplin "attacked [him] without provocation because he submitted staff complaints," *id.* at 11, and specifically "because he filed grievances two days prior." *Id.* at 12.

### 1.      Defendants Marientes & Crespo

With respect to Sgt. Marientes and Officer Crespo, the Court finds Plaintiff's allegations fail to allege either a plausible First or Eighth Amendment claim for relief. *See* 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b)(1); *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

"[A] prison official violates the [Cruel and Unusual Punishments Clause of the] Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, Plaintiff must allege the prison official he seeks to hold liable had a "'sufficiently culpable state of mind' . . . [T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health and safety;" . . . he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

For claims arising from the use of excessive force, however, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). When

alleging a breach of the duty to protect prisoners, a plaintiff must "show that the officials acted with deliberate indifference to the threat of serious harm or injury to an inmate." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013).

Plaintiff claims only that Sgt. Marientes "declared his indifference" after Plaintiff complained about Hultz on July 12, 2017, by giving him a "high five" on July 12, 2017, *see* Compl. at 9, and that he observed Officer Crespo read his CDCR Form 22 on July 14, 2017, and "not intervene" when Hultz allegedly "hit[] [his] hands … to prevent him from writing." *Id.* at 10. But neither of these isolated acts or alleged omissions are sufficient to plausibly suggest either that Marientes or Crespo took any adverse action against Plaintiff because he had engaged in any protected conduct, *see Rhodes*, 408 F.3d at 567, or were aware of specific facts to suggest Plaintiff faced a "substantial risk of serious harm." *Farmer*, 511 U.S. at 837. By merely invoking the legally significant yet conclusory label of "indifference" with respect to both Defendants Marientes and Crespo, Plaintiff has not pleaded enough. *See Iqbal,* 556 U.S. at 678 ("Threadbare recitals of a cause of action's elements, supported by mere conclusory statements" do not suffice to state a plausible claim for relief). Instead, Plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). "[M]ere presence at the scene of a constitutional violation is insufficient to constitute integral participation." *Adkins v. Corrs. Corp. of America*, 681 F. App'x 579, 581 (9th Cir. 2017) (citing *Jones v. Williams*, 297 F.3d 930, 936 (9th Cir. 2002).

For these reasons, the Court dismisses Plaintiff's claims against both Defendants Marientes and Crespo pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b)(1). *See also Harris v. Holguin*, No. CV1810382DMGDFM, 2019 WL 7987683, at *4 (C.D. Cal. Feb. 27, 2019) (sua sponte dismissing claims against correctional officers alleged to have "d[one] nothing but sit there and watch" another officer's acts of harassment, discrimination, and retaliation, and to have failed to "stop or correct t[he] injustice.").

///

2. *Defendants Hultz, Strong, Jaramillo & Pamplin*

The Court *does* find, however, that Plaintiff's retaliation and excessive force claims, alleged to have arisen at RJD on July 12-14, 2017, and involving Defendants Hultz, Strong, Jaramillo, and Pamplin *only*, are sufficient to surpass the "low threshold" set for initial *sua sponte* screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).[19] *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Hudson*, 503 U.S. at 6–7; *Rhodes*, 408 F.3d at 567–68.

## G.   LAC Defendants & Claims

Finally, with respect to all claims alleged against Defendants Puentes, Mebane, Nkoocha, and Thompson, arising at LAC beginning in late December 2017, and continuing as late as September 2019, the Court finds they are unrelated and improperly joined to the transactions, occurrences, and claims alleged against the RJD Defendants which form the basis of Plaintiff's suit.

The Federal Rules of Civil Procedure set forth the rules regarding joinder of parties or claims. "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternate claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). "Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Palmer v. Woodford*, No. 1:06-CV-00512-LJO, 2011 WL 6294372, at *1-2 (E.D. Cal. Dec. 15, 2011). Moreover, claims may be brought against multiple defendants only if (1) the claim arises out of the same

---

[19] Plaintiff is cautioned that "the sua sponte screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [any individual defendant] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

3:19-cv-02355-LAB-KSC

transaction or occurrence, or series of transactions and occurrences, and (2) there are common questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997); *Desert Empire Bank v. Insurance Co. of North America*, 623 F.3d 1371, 1375 (9th Cir. 1980).

As currently pleaded, the LAC claims Plaintiff tacks on to the July 2017 retaliation, excessive force, disciplinary hearing claims alleged against the named RJD Defendants, and arising at a different facility at least six months to more than two years after, are not properly joined pursuant to Federal Rules of Civil Procedure 18 and 20, and therefore may not proceed in a single action. *See e.g., Palmer*, 2011 WL 6294372, at *1-2; *Coughlin*, 130 F.3d at 1351. Plaintiff's LAC claims do not arise out of the same transaction or occurrence as his RJD claims, involve a whole separate set of Defendants, and do not present common questions of fact or law. *See* Fed. R. Civ. P. 20(a)(2).

Therefore, while Plaintiff may amend his disciplinary hearing claims arising at RJD as a result of the July 12, 2017 through July 14, 2017 incidents with respect to Defendants Cottrell, Fink, Luna, Garza, Aliva, Crespo, Ortiz, and Legier and/or his First and Eighth Amendment claims with respect to Defendants Marientes and Crespo in order to address his pleading deficiencies as explained above, the remainder of his claims, all alleged to have arisen at LAC are subject to dismissal without prejudice, but without leave to amend in *this* case, should he wish to raise them in a new and separate civil action, filed in the proper venue. *See* 28 U.S.C. § 84(c)(2) ("The [Western Division of the] Central District [of California] comprises the counties of … Los Angeles, …."); *see also* 28 U.S.C. § 1391(b)(1), (2).

### H.   Leave to Amend

A pro se litigant typically must be given leave to amend his pleading to state a claim unless it is absolutely clear the deficiencies cannot be cured by amendment. *See Lopez*, 203 F.3d at 1130 (noting leave to amend should be granted when a complaint is dismissed under 28 U.S.C. § 1915(e) "if it appears at all possible that the plaintiff can correct the defect"). Therefore, to the extent Plaintiff wishes, the Court will grant him a

28

chance to fix the pleading deficiencies discussed in this Order, *but with respect to his RJD claims only*. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).

In the alternative, should Plaintiff wish to proceed with respect to his retaliation and excessive force claims against RJD Defendants Hultz, Strong, Jaramillo, and Pamplin, he may file a Notice indicating his intent to stand on his original Complaint and proceed with those claims *only*. If Plaintiff chooses this option, the Court will then direct the United States Marshal to effect service of his original Complaint on Defendants Hultz, Strong, Jaramillo, and Pamplin pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3).

**IV.    Conclusion and Orders**

Based on the foregoing, the Court:

1.    **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2) and **DENIES** his Motion to Appoint Counsel (ECF No. 7).

2.    **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the full $350 filing fee owed in this case, and to submit to the Clerk of the Court monthly payments in an amount equal to twenty percent (20%) of the preceding month's income, each time the amount in his account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3.    **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4.    **DISMISSES** Plaintiff's Complaint *sua sponte* for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), without prejudice and *with* leave to amend as to Defendants Kernan, Paramo, Asuncion, Marientes, Cottrell, Fink, Luna, Garza, Crespo, Aliva, Olivarria, Self, Legier, and Ortiz.

///

5.     **DISMISSES** Plaintiff's claims as to Defendants Mebane, Puentes, Nkoocha, and Thompson without prejudice but *without* leave to amend in this action as improperly joined pursuant to Fed. R. Civ. P. 18 and 20; and

5.     **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to either:

(a)     Notify the Court of his intention to proceed with the retaliation and excessive force claims alleged in his original Complaint against RJD Defendants Hultz, Strong, Jaramillo, and Pamplin only; or

(b)     File an Amended Complaint which cures all the deficiencies of pleading noted in this Order with respect to his First, Eighth, and Fourteenth Amendment claims against the RJD Defendants. Plaintiff is cautioned that should he choose this course, his Amended Complaint must be clearly entitled "First Amended Complaint," include Civil Case No. 3:19-cv-02355-LAB-KSC in its caption, and be complete by itself without reference to his original Complaint. Plaintiff must re-allege *all* claims in their entirety, including his retaliation and excessive force claims against Defendants Hultz, Strong, Jaramillo, and Pamplin, because any Defendant not re-named and any claim not re-alleged in the Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty*., 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to choose either of these options within 45 days, the Court will enter a Order dismissing his case based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), § 1915A(b)(1), and his failure to prosecute in compliance with a court order. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into a dismissal of the entire action."); S.D. Cal. CivLR 41.1; *Edwards v. Marin Park, Inc*., 356 F.3d 1058,

1065 (9th Cir. 2004) (finding *sua sponte* dismissal pursuant to Fed. R. Civ. P. 41(b) proper where a plaintiff is notified of deficiencies in complaint and is given "the opportunity to amend [the complaint] or be dismissed" but "[does] *nothing*.") (citations omitted; emphasis in original).

**IT IS SO ORDERED**.

Dated: April 29, 2020

_____
Hon. Larry Alan Burns
Chief United States District Judge

3:19-cv-02355-LAB-KSC