1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18
19
20
21
22
23
24

EDLY A. ATHERLEY, II,
CDCR #AY-8220,

Plaintiff,

vs.

SCOTT KERNAN, et al.,

Defendants.

Case No.:  3:19-cv-02355-LAB-DEB

**ORDER:**

**1)  SCREENING AND DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF AMENDED COMPLAINT UPON DEFENDANTS HULTZ, JARAMILLO, STRONG, PAMPLIN, CRESPO AND JOYNER PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3) [ECF No. 10]**

**AND**

**2)  DISMISSING CLAIMS AGAINST REMAINING DEFENDANTS PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b)**

25
26
27
28

Currently before the Court and subject to initial screening is a First Amended Complaint ("FAC") (ECF No. 10) filed by Plaintiff Edly A. Atherley, II, a prisoner at Mule Creek State Prison. Plaintiff has been granted leave to proceed in forma pauperis

1

("IFP"), but upon initial review, the Court found his original Complaint, which named more than two dozen correctional officials employed at Richard J. Donovan Correctional Facility ("RJD") and California State Prison-Los Angeles County ("LAC"), partly failed to state a claim upon which § 1983 relief can be granted. *See generally* ECF No. 8. Therefore, the Court granted Plaintiff the option to either proceed with the First and Eighth Amendment claims he sufficiently alleged against RJD Defendants Hultz, Strong, Jaramillo, and Pamplin only, or to amend his pleading altogether. Plaintiff elected to amend, so the Court must screen his FAC afresh. *See* 28 U.S.C. § 1915(e)(2) and § 1915A(b).

## I.   Sua Sponte Screening Requirement & Standard of Review

As Plaintiff knows, the Court must dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

Federal Rules of Civil Procedure 8(a) and 12(b)(6) require a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted);

*Wilhelm*, 680 F.3d at 1121. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

And while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## II. Plaintiff's Factual Allegations

Plaintiff's FAC, like his original Complaint, alleges First, Eighth, and Fourteenth Amendment violations against 19 Defendants,[1] all correctional officials at RJD and LAC, with the exception of Scott Kernan, who is alleged to have been the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") at the time Plaintiff's claims arose in July and August 2017. *See* FAC at 1–6.[2]

---

[1] The Court's April 29, 2020 Order dismissed claims included in Plaintiff's original Complaint arising at LAC in late December 2017 through September 2019 and against Defendants Puentes, Mebane, Nkoocha, and Thompson as improperly joined and without leave to amend. *See* ECF No. 8 at 27–28, 30. Plaintiff was granted leave to amend his claims against LAC Warden Asuncion, but he does not name Asuncion as party in his FAC and alleges no claims against him. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (claims dismissed with leave to amend no re-alleged in amended pleading may be "considered waived.").

[2] Plaintiff requests that the 325 pages of exhibits he submitted in support of his original Complaint, *see* ECF No. 5, "be attached to" his FAC. *See* FAC at 24. While the Court's Local Rules ordinarily require that "[a]ll amended pleadings ... contain copies of all exhibits referred to[,] ... [p]ermission may be

On July 12, 2017, Plaintiff was incarcerated at RJD, and assigned to a Sensitive Needs Yard and the "Mental Health Services Delivery System" while he was being treated for bipolar disorder. *Id.* at 8. That morning, Plaintiff provided his ID card to Officer Galindo[3] in order to purchase items from the canteen. *Id.* Plaintiff claims to have later complained to the canteen manager regarding "unfair and discriminatory" shopping practices, which he confirmed with inmate Clark, one of the canteen clerks. *Id.* Plaintiff then sat a table nearby in order to "tak[e] contemporaneous notes on the unfolding events." *Id.* at 8–9.

Officer M. Hultz soon arrived and "incited the crowd of inmates by telling them that the canteen would be closed" because of Plaintiff. *Id.* at 9. Hultz then retrieved Plaintiff's ID card from the canteen and "threw [it] out onto the yard and into the dirt." *Id.* When Plaintiff requested his name, Hultz "began to mock and gesture at [him]." *Id.* Plaintiff "continued to document his behavior" as Hultz "glared at [him] in a menacing fashion and spit sunflower seeds from his mouth." *Id.*

When Plaintiff approached Defendant Marientes, Hultz's supervisor, "[i]n an effort to resolve his concerns, Marientes said: "I don't care. Put it in a 602." *Id.*[4] Marientes then proceeded to the canteen "and upon confirmation of Hultz's threatening behavior, t[old]

---

obtained from the court, if desired, for the removal of any exhibit or exhibits attached to prior pleadings, in order that the same may be attached to the amended pleading." *See* S.D. Cal. CivLR 15.1(a). Thus, while "it is not the Court's duty," when screening a complaint pursuant to 28 U.S.C. § 1915(e) and § 1915A, "to wade through exhibits to determine whether cognizable claims have been stated," *Woodrow v. Cty. of Merced*, No. 1:13-cv-01505-AWI, 2015 WL 164427, at *4 (E.D. Cal. Jan 13, 2015), the Court grants Plaintiff's request and will consider specific exhibits identified in Plaintiff's FAC as incorporated by reference in support of his claims. *See Hebbe*, 627 F.3d at 342 (reaffirming liberal construction of pro se pleadings after *Iqbal*).

[3] Galindo is not named as a Defendant and Plaintiff does not again refer to Galindo with respect to his claims for relief.

[4] To resolve their issues through the administrative appeals process, inmates must submit a CDCR 602 Form, commonly referred to as an appeal, grievance, or "602," which describes the issue and action requested. *See Barrett v. Berry*, No. 19-CV-01923-HSG, 2020 WL 5816224, at *3 (N.D. Cal. Sept. 30, 2020) (citing Cal. Code Regs. tit. 15, § 3084.2(a)).

4

him: 'Good job!'" *Id.* at 9–10. Plaintiff claims Marientes also "congratulat[ed]" and "encourage[ed]" Hultz by giving him a "high-five." *Id.* at 10.

Plaintiff then spoke to Officer Yap,[5] and asked him to sign three CDCR Form 22s.[6] Plaintiff describes two of the Form 22s as "employee misconduct complaints addressed to Correctional Captain E. Garza … regarding Hultz and Marientes respectively." Yap signed the Form 22 pertaining to Hultz, but allegedly refused to sign the one concerning Marientes, telling Plaintiff: "They'll put me in the Crow's Nest[.]" *Id.* Plaintiff took this to mean Yap "would suffer retaliation by being assigned an unfavorable detail." *Id.* Yap told Plaintiff "There are a few cool sergeants that'll sign it for you." *Id.* at 11. The Form 22 regarding Hultz was "submitted via institutional mail." *Id.*; *see also* Pl.'s Ex. 4, ECF No. 5 at 9.

Two days later, on July 14, 2017, Plaintiff proceeded to the dining hall for breakfast carrying a 3"x5" index card, a black pen, and "the 22 pertaining to Marientes." See FAC at 11. He claims Officer Crespo "pointed [him] out to Hultz." Id. at 11. Hultz asked Plaintiff: "So, where's my write-up? I'm waiting to sign it." *Id.* at 11. Plaintiff handed Hultz the Form 22, Hultz read it, became "angry," and placed it in his back pocket. *Id.*; *see also* Pl.'s Ex. 5, ECF No. 5 at 11. When Plaintiff requested a "receipt," as he claims Hultz was "obligated" to provide, Hultz refused and said: "I have 72 hours to review this." *Id.* Plaintiff claims when he asked for Crespo's "assistance in obtaining the 22," Crespo told him to "Go eat," and that she'd "get it back for [Plaintiff]." *Id.*

---

[5] Plaintiff does not name Yap in his list Defendants. *See* FAC at 1-6, Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."). But in the body of his FAC, Plaintiff does include Yap in his second Eighth Amendment cause of action. *See* FAC at 26-28. Therefore, the Court will consider Yap to be an intended Defendant. *See Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1198 (9th Cir. 2014) ("[A] party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant.") (citation omitted).

[6] Plaintiff explains that at the time, a CDCR Form 22 was used to request an "Interview, Item, or Service," *see* Cal. Code Regs., tit. 15 § 3086, but has since been "eliminated" as part of revisions made to the CDCR's administrative grievance and appeals system effective June 1, 2020. *See* FAC at 10 n.7.

When leaving the dining hall, Plaintiff claims he also saw Crespo reading the Form 22, but as he approached, "the form was given back to Hultz." *Id.* at 12. Plaintiff again requested that Hultz return the form, and indicated he would "ask someone else to sign it." Hultz still refused, so Plaintiff "prepared to leave the area and removed his pen and index card from his pocket to document yet another adverse interaction with Hultz." *Id.*

Hultz then "violently assault[ed] Plaintiff by hitting his hands to prevent him from writing, [and] knocking the items to the ground." *Id.* Plaintiff claims he "turned to Crespo … seeking her help," but Crespo failed to intervene. *Id.* As he bent down to pick up his card and pen, Plaintiff contends Hultz "grabbed [him] by the back of his shirt with his left hand," and "grabbed [him] by his throat" with his right, "squeezed," and "obstruct[ed] [his] breathing." *Id.* at 12-13. Plaintiff claims he "did not try to remove Hultz's hand from his throat," because while he "fear[ed] for his life," he "believed any attempt to defend himself would provoke further violence." *Id.* at 13.

Nevertheless, Plaintiff contends Hultz "became increasingly angry," "violently ran [him] into a concrete wall causing a 2″ laceration to [his] right elbow," and "continued to pin Plaintiff's arm between the wall and [his] body." *Id.* Plaintiff claims this was the first time Hultz commanded that he "cuff up," but Plaintiff was unable to comply because Hultz "precluded him from placing his hands behind his back." *Id.*

Plaintiff claims Hultz then "maliciously body-slammed [him] into the ground," "under the guise that [he] was disobeying an order." *Id.* Officers Strong and Jaramillo were summoned and "immediately" placed their weight on Plaintiff's back and "beat him with their knees and elbows." *Id.* Plaintiff further contends these officers also applied their body weight against his head and spine "in a maneuver known to be lethal," and claims Jaramillo "repeatedly slammed Plaintiff's head into the ground." *Id.* at 13-14. Plaintiff "continued to be laid prone," and repeatedly declared he was "not resisting," but Jaramillo claimed his body was "tense." *Id.* at 14. Plaintiff claims he "continued to beg observing officers for assistance," and accused Hultz of "trying to cover up a complaint," but Hultz "silenced [him] by placing his gloved hand over Plaintiff's mouth." *Id.*

During his escort to the gym, Plaintiff claims Strong and Pamplin "deliberately and maliciously tightened the cuffs around [his] wrists restricting the flow of blood." *Id.* They further "interlocked their arms through Plaintiff's," "applied pressure to his shoulder," and "forc[ed] his body to bend forward exacerbating the injury to his back." *Id.* When Plaintiff "expressed" that "their methods were not needed," Strong "threaten[ed] to 'drop' … and continue to beat him." *Id.*

Once in the gym, Plaintiff claims he was "slammed into a glass window" and "thrown" into a 3′ x 3′ cell, still handcuffed, and alleging his assault was due to his having filed staff complaints. *Id.* at 14-15. While he continued to "plead with officers to remove [his] restraints," and "expressed that their behavior was 'unethical' and 'unjust,'" Strong mocked Plaintiff and said: "'I can't hear you Martin Luther King 'cuz [sic] I'm just a dumb white boy. What's justice?" *Id.* at 15.

Forty-five minutes later, Plaintiff was examined by LVN Letuligasenca,[7] who asked Strong to remove Plaintiff's restraints. *Id.* at 15-16. Letuligasenca administered his anti-depressant medication, and recorded cuts and scratches on Plaintiff's shoulder and forearm and reports of pain in his lower back on a CDCR Form 7219 "Medical Report of Injury or Unusual Occurrence." *Id.* at 16; *see also* Pl.'s Ex. 6, ECF No. 5 at 13.

Plaintiff claims he remained in the gym "unsupervised" when Officer Crespo approached and "apologized for her inability to help." FAC at 16. Plaintiff contends Crespo "offered a warning … to make him aware of the story that Hultz was going to create to cover his actions." *Id.* Plaintiff claims he also spoke to Sgt. Cottrell, the Responding Supervisor, but Cottrell "ignored [his] accusations of … unnecessary force," and instead of "beginning the required course of investigation," Cottrell "erroneously sent Plaintiff to the Administrative Segregation Unit ("ASU"). *Id.* On the same day, Officer Hultz filed a CDCR Rules Violation Report ("RVR") Log No. 2992331, charging

---

[7] LVN Letuligesenca is not named as a Defendant.

Plaintiff with battery on a peace officer (Hultz) in violation of Cal. Code Regs., tit. 15 § 3005(d)(1). *See* Pl.'s Ex. 10, ECF No. 5 at 27.[8]

On or around July 16, 2017, while he was in ASU, Plaintiff claims an unidentified sergeant responded to the "initial misconduct complaint" dated July 12, 2017, but did not take his statement or conduct an interview. *See* FAC at 17. On or around July 18, 2017, Plaintiff claims Cpt. Garza informed him of a pending Classification Committee Review hearing.[9] *Id.* Plaintiff claims he gave a statement that Garza declined to document and requested a polygraph exam. *Id.*

On July 20, 2017, Plaintiff claims to have appeared before the Committee, and to have informed an unidentified Captain of his willingness to undergo a polygraph examination. The Captain "halted proceedings," and ordered Acting Lt. Luna to "conduct [a] video recording." *Id.* at 18. Luna had Plaintiff placed in a holding cell and ordered an unidentified Psychiatric Technician ("PT") to "conduct an injury report." *Id.* at 18.[10]

---

[8]  While the Court construes the allegations in Plaintiff's FAC liberally during screening, *see Neitzke v. Williams,* 490 U.S. 319, 330 n.9 (1989) (the liberal pleading standard applied to pro se litigants "applies only to a plaintiff's factual allegations."), it notes that in the "Circumstances of Violation" section of RVR Log No. 2992331, which Plaintiff has incorporated by reference as an exhibit, Hultz describes his July 14, 2017 encounter with Plaintiff quite differently. For example, Hultz characterizes Plaintiff as demanding and confrontational with respect to his Form 22, claims he cussed, refused orders to return to the chow hall, impeded his duties, refused to cuff up, "spun his body," struck Hultz with his elbow in the left bicep, and continued to resist even after Hultz pulled him to the ground by his shirt. The RVR's account also describes Plaintiff as noncompliant after officers Strong and Jaramillo were called in to assist, but they were able to secure his legs, and then apply handcuffs. *See* Pl.'s Ex. 10, ECF No. 5 at 27. An RVR Supplemental Report, and Plaintiff's Aug. 13, 2107 Disciplinary Hearing Results are included together as Plaintiff's Ex. 10. *See* ECF No. 5 at 26-41. Hultz is identified as the Reporting Employee, Sgt. K. Cottrell is identified as the Reviewing Supervisor, and Correctional Officer E. Garza is identified as the official who classified Plaintiff's offense level as serious. *Id.* at 27-28.

[9] "Any serious disciplinary action requiring reconsideration of an inmate's program, work group, or housing assignment, shall be referred to the next reasonably scheduled classification committee for review." Cal. Code Regs., tit. 15 § 3315(g); *Armenta v. Paramo*, No. 3:16-CV-02931-BTM-KSC, 2018 WL 4612662, at *3 n.6 (S.D. Cal. Sept. 25, 2018).

[10]  On July 21, 2017, Plaintiff was also interviewed during a "private therapy session" with a Licensed Clinical Social Worker named Mondell-Cook. *See* FAC at 19. Plaintiff contends Mondell-Cook noted he had no behavior or "assaultive alerts," and recommended "increases in medication" and an "alternative

During that exam, Plaintiff contends Luna "explicitly ordered" the PT to document his cuff burns as "old scars." *Id.* at 18.

Plaintiff was then taken to a room with Luna and Sgt. Fink. Plaintiff claims Luna told him his injuries would be recorded, but threatened that if he "tr[ied] to say any[thing]" that contradicted the injury report, he would "stop this shit." *Id.* Specifically, Plaintiff claims Luna "angrily attempted to coerce [him] into avoiding the term 'unnecessary force,'" and just "moments" later ordered Fink to stop recording. Plaintiff claims Luna said: "You're done. You said you got your injuries because Hultz threw your ID in the dirt." *Id.*

On July 24, 2017, Plaintiff claims to have "completed a formal request for an official change of decision, action, or policy on a Form 602" and to have "personally" handed it to Officer C. Avila, who was "acting as [his] Investigative Employee (IE)"[11] *Id.*

---

placement" to ASU due to his mental health needs. *Id.* Plaintiff does not refer to any specific exhibit to corroborate Mondell-Cook's evaluation, but a Mental Health Assessment Form CDCR 115-MH-A, included as part of RVR Log No. 2992331, signed and dated by L. Levitt, Ph.D. on July 26, 2017, identifies Mondell-Cook as Plaintiff's "primary clinician in ASU." *See* Pl.'s Ex. 8, ECF No. 5 at 22. "A Mental Health Assessment is a means to incorporate clinical input into the disciplinary process when mental illness or developmental disability/cognitive or adaptive functioning deficits may have contributed to behavior resulting in a Rules Violation Report. Mental Health Assessments shall be considered by the hearing officer or senior hearing officer during disciplinary proceedings when determining whether an inmate shall be disciplined and when determining the appropriate method of discipline." Cal. Code Regs. tit. 15, § 3317(a). Plaintiff also claims Dr. Levitt "provided an unsolicited statement to prison officials concerning the veracity" of his excessive force and retaliation claims "in light of the evidence provided to her." *See* FAC at 20. But the only statement offered by Levitt that makes reference to Plaintiff's claims against Officer Hultz was in answer to the clinical question whether a "mental illness and/or developmental disability/cognitive or adaptive functioning deficits contributed to the behavior that led to the RVR." *See* Pl.'s Ex. 8, ECF No. 5 at 21. Dr. Levitt answered "No" and did note that Plaintiff "adamantly denied the allegations against [him]." *See* Pl.'s Ex. 8, ECF No. 5 at 21. In fact, Dr. Levitt expressly acknowledged that "[a]ssessing the truthfulness of [Plaintiff's] report [wa]s outside the scope of [her] evaluation," and opined only that Plaintiff's report did "not seem to be influenced by symptoms of a mental illness." *Id.* Determining whether allegations are true, as opposed to the product of mental illness, of course, are two entirely different things. In any event, neither Mondell-Cook nor Dr. Levitt are named as Defendants.

11   Plaintiff identifies Exhibit 7 as his July 24, 2017 Form 602, but that exhibit is *not* a CDCR 602 Inmate/Appeal Form. *See* FAC at 19; Pl.'s Ex. 7, ECF No. 5 at 15. Instead, the document Plaintiff refers

at 19. Plaintiff claims IEs "are assigned to investigate the facts when the matter requires further investigation, [but] the housing status of the accused makes it difficult for him to gather needed evidence." *Id.* at 19-20. Plaintiff claims he specifically asked Avila to "call Ms. Crespo," but Avila said, "No, don't do that." *Id.* at 20.[12] On July 31, 2017, Plaintiff was transferred from RJD to LAC. *Id.* at 20-21.[13]

On August 13, 2017, Plaintiff appeared at a disciplinary hearing, conducted at LAC, held in response to RVR Log No. 2992331, and charging him with a serious rules violation for battery on a peace officer. *Id.* at 21; *see also* Pl.'s Ex. 10, ECF No. 5 at 33-41. Plaintiff "gave a thorough statement regarding his defense," but claims Lt. B. Legier, the Senior Hearing Officer, "deliberately misrepresented his statement" "deliberately ignored [his] Mental Health Assessment," and found him guilty based on the "sheer number of witnesses (Correctional Officers) against [him]." *Id.* at 21, 31; *see also* Ex. 10, ECF No. 5 at 40. Plaintiff claims that during the RVR hearing, Legier refused to acknowledge that "cover ups … happen in the year 2017." FAC at 21.

On August 17, 2017, Plaintiff was interviewed via videotape while in the ASU at LAC by Lt. B. Perez and Sgt. T. Smith "at the request of RJD Lt. L. Ortiz" in order to enter "supplemental" evidence into the record. *Id.* at 22; *see also* Pl.'s Ex. 11, ECF No. 5

---

to is a single handwritten page he entitled "Employee Misconduct" which recounts his July 12, 2017 and July 14, 2017 encounters with Officers Hultz, Crespo, Pamplin, and Strong. *See* ECF No. 5 at 15.

[12]   Avila's RVR Supplemental Report dated August 8, 2017 confirms Avila conducted an IE Interview with Plaintiff in the ASU on July 24, 2017. *See* Pl.'s Ex. 10, ECF No. 5 at 31. Avila's Report indicates Plaintiff requested that Avila pose questions to Sgt. Fink and an inmate named Harvey; but also indicates Plaintiff did *not* request any staff or inmate witnesses, reporting employee, or investigative employees appear as witnesses. *Id.* at 31-32, 37.

[13]   Plaintiff also claims another inmate named Scholl, also scheduled to transfer to another institution, witnessed unidentified "prison staff" at RJD "deliberately place Plaintiff's legal mail in Scholl's property. *See* FAC ay 20-21. Plaintiff contends "this scheme was commenced in furtherance of the retaliation against [him]." *Id.* at 21.

at 43.[14] Plaintiff received confirmation from Smith that the video was "entered into evidence and submitted to Ortiz." *See* FAC at 22-23.

As a result of the August 13, 2017 guilt determination, Plaintiff claims he "was sentenced to six months in isolation." *Id.* at 22. RVR Log No. 2992331's Disposition Findings, confirm that on September 7, 2017, LAC's Chief Disciplinary Officer, Warden T. Lewandowski referred Plaintiff to a Classification Committee for a SHU Term Assessment, advised him of a 150-day non-restorable credit forfeiture, and assessed a 90-day loss of Privilege Group C, canteen, phone, day room, and package privileges. *See* Pl.'s Ex. 10, ECF No. 5 at 39-41.[15]

Between August and November 2017, Plaintiff submitted several letters to the CDCR's Office of Internal Affairs ("OIA"), Division of Adult Institutions, and Office of Correctional Safety reporting Hultz and Marientes's alleged misconduct, complaining he had been falsely charged and retaliated against, and demanding a polygraph examination. *See* FAC at 23; Pl.'s Ex. 12, ECF No. 5 at 45-49. His exhibits show these letters were routed to RJD's Warden, Defendant Daniel Paramo, who responded twice on October 23, 2017, and again on November 8, 2017. *Id.* at 46, 48-49. Both times, Paramo directed Plaintiff to raise and properly pursue his claims via the CDCR 602 Inmate/Parolee appeals process. *Id.* at 46, 48-49.[16] Paramo further notified Plaintiff that all reported

---

[14] While RJD Lt. L. Ortiz is named as a Defendant, neither Perez nor Smith are identified as parties. *See* FAC at 1-6.

[15] T. Lewandowski is not named as a Defendant.

[16] In his FAC, Plaintiff claims Paramo "specifically told him that his initial grievance was being processed," but a Correctional Counselor at High Desert State Prison "determined that Warden Paramo was not being truthful." *See* FAC at 23, 30. The Court has reviewed both of Paramo's letters and confirms that his November 8, 2017 letter acknowledges a "record of [Plaintiff] submitting an Inmate Appeal, Log No. X-17-05116, relevant to [the] incident which occurred on July 14, 2017," and advises Plaintiff that the appeal "would be completed and [he would] receive a response." *See* Pl.'s Ex. 12, ECF No. 5 at 48. In fact, Plaintiff's additional Exhibit 13 includes a copy of CDCR 602 Log No. X-17-05116, dated August 23, 2017, in which Plaintiff sought to "appeal [the] finding of guilt entered 13 August 2017." *Id.* at 53. Plaintiff has also submitted and has asked to incorporate Exhibit 13, which includes the Third Level

incidents of force were subject to review by an Institutional Executive Review Committee ("IERC"), and that the IERC had reviewed Officer Hultz's actions and "determined th[e] incident require[d] no further review." *Id.* at 48.

Finally, Plaintiff claims former CDCR Secretary Scott Kernan "knew of and facilitated … well-documented abuses of prisoners by prison staff at RJD," but "ignored these abuses." *Id.* at 32. He further claims to have "personally informed" and to have solicited Kernan's assistance of after he saw Kernan interviewed on 60 Minutes by Oprah Winfrey," but Kernan "did not initiate the appropriate investigations despite the many failures of his subordinates." *Id*.

## III. Claims for Relief

Plaintiff's FAC essentially sets out the same set of facts and bases for relief as his original pleading. Specifically, he contends Defendants Hultz, Jaramillo, Strong, and Pamplin violated both his First and Eighth Amendment rights by using excessive force against him on July 14, 2017 in retaliation for his having filed prison grievances. *See* FAC at 24-26. The Court will refer to these claims as Counts 1 & 2.[17] He next claims Defendants Marientes, Yap, Crespo, and Joyner violated the Eighth Amendment by failing to intervene during both his first encounter with Hultz on July 12, 2017, and during the July 14, 2017 incident. *Id.* at 26-28. The Court will refer to these claims as

_____

Appeal Decision denying "TLR Case No. 1715740" and "Local Log Nos. LAC-17-04275 and RJD-17-05116" on June 15, 2018. *See id.* at 51-52. Therefore, it appears Plaintiff's own exhibits belie his assertions as to Paramo's "truthfulness" with respect to the processing and review of the claims of wrongdoing he raised and in CDCR 602 Log No. X-17-05116.

[17] Plaintiff's FAC combines both his First and Eighth Amendment claims against Hultz, Jaramillo, Strong, and Pamplin under the heading marked by Roman numeral "II," *see* FAC at 24-26, labels his Eighth Amendment claims against Yap, Crespo, and Joyner as "III," *id.* at 26-28, conflates his First, Eighth, and Fourteenth Amendment claims against Garza, Fink, Luna, Avila, Olivarria, Self, Ortiz, Paramo, Marientes, Cottrell, Legier, and Kernan under "IV," *id.* at 28-31, and captions a separate Eighth Amendment claim against Kernan alone as "V." *Id.* at 31-32. Because the underlying facts supporting all these claims overlap but the constitutional bases for Plaintiff's purported causes of action against each individual Defendant do not, the Court has re-categorized Plaintiff's claims for purposes of clarity and to better organize its analysis.

Count 3. Next, Plaintiff claims Defendants Garza, Fink, Luna, Avila, Olivarria, Self, Ortiz, and Paramo "falsely charg[ed] him with a disciplinary violation" in retaliation "for filing appeals." *Id.* at 28-31. The Court will refer to these claims as Count 4. He further contends Defendants Marientes, Cottrell, Garza, Luna, Fink, Legier, Ortiz, Paramo and Kernan acted with "deliberate indifference" to his suffering and ignored his claims of retaliation in violation of both the Eighth and Fourteenth Amendments. *Id.* at 31-32. The Court will refer to these claims as Count 5.

**IV.    Discussion and Analysis**

For the reasons discussed below, the Court finds Plaintiff's allegations insufficient to state any plausible First, Eighth, or Fourteenth Amendment claim for relief with respect to any Defendant *except* Hultz, Strong, Jaramillo, Pamplin, Crespo, and Joyner. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), § 1915A(b)(1); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

A.    <u>Individual Liability – Defendants Paramo & Kernan – all Counts</u>

With respect to CDCR Secretary Kernan and Warden Paramo, the Court finds Plaintiff's FAC still fails to include sufficient factual content to establish personal liability. *See Iqbal*, 556 U.S. at 676-77. Plaintiff claims Paramo "held the rank of Warden and is responsible for the operation and the safety of inmates at RJD," and Kernan "held the rank of CDCR Secretary." *See* FAC at 6. But "a defendant may not be held liable under § 1983 merely because he had certain job responsibilities." *Hernandez v. Aranas*, No. 2:18-CV-00102-JAD-BNW, 2020 WL 569347, at *4 (D. Nev. Feb. 4, 2020) (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). Because "[v]icarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through [his] own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (supervisor may be held liable under § 1983 only if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation") (citations and internal quotation marks omitted); *Fayle v. Stapley*, 607 F.2d 858, 862 (9th

Cir. 1979) (when a named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged); *Victoria v. City of San Diego*, 326 F. Supp. 3d 1003, 1013 (S.D. Cal. 2018) ("Liability under § 1983 arises only upon a showing of personal participation by the defendant."); *Jones v. Comm'ty Redev. Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim).

Plaintiff alleges no individual acts or wrongful conduct taken by either Paramo or Kernan to violate any of his constitutional rights. As to Warden Paramo, Plaintiff continues to claim only that he failed to properly or accurately respond to letters complaining of officer misconduct that Plaintiff originally addressed to the CDCR's Office of Internal Affairs. *See* FAC at 23, 46, 48-49. Plaintiff faults Paramo for "participat[ing] in [a] coverup" by not being "truthful" in his response to these letters after they were forwarded to him. *Id.* at 23, 30. But he alleges no further facts to plausibly show how or the Warden's acts or omissions caused any constitutional violation. *See Iqbal*, 556 U.S. at 676; *Crowley*, 734 F.3d at 977.

Plaintiff's claims against Secretary Kernan are even more tenuous: he claims, as he did in his original Complaint, only to have seen Kernan interviewed by Oprah Winfrey, and to have written to him afterward seeking his "help." *See* FAC at 32. Plaintiff faults Kernan for failing to "initiate the appropriate investigations despite the many failures of his subordinates." *Id.* But this type of conclusory and unadorned accusation fails to plausibly support an individualized claim for relief against the Secretary. *See Iqbal*, 556 U.S. at 677; *Starr*, 652 F.3d at 1207.

For these reasons, the Court finds Plaintiff has failed to state any plausible claim for relief against Defendants Paramo and Kernan pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b); *Lopez*, 203 F.3d at 1126-27; *Wilhelm*, 680 F.3d at 1121.

/ / /

B.   <u>Counts 1 & 2 – Hultz, Jaramillo, Strong, and Pamplin</u>

Plaintiff's retaliation and excessive force claims arising on July 12, 2017 and July 14, 2017 as re-alleged against Defendants Hultz, Jaramillo, Strong, and Pamplin in Counts 1 and 2, however, *see* FAC at 11-15, 24-26, remain sufficient to state a plausible claim for relief under both the First and Eighth Amendments. *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) ("[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."); *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) ("Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.").

C.   <u>Count 3 – Marientes, Yap, Crespo and Joyner</u>

Plaintiff also contends Defendants Marientes, Yap, Crespo, and Joyner violated his Eighth Amendment rights because they failed to "prevent the harm [he] suffered" and "allow[ed] the excessive force" he claims Defendants Hultz, Jaramillo, Strong, and Pamplin used against him on July 14, 2017. *See* FAC at 26-28.

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). Thus, a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995); *see also Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 990, 1002 (C.D. Cal. 2014) (noting "it is established law that officers have a duty to intercede when a fellow officer violates the constitutional rights of a citizen").

To state An Eighth Amendment claim based on an alleged failure to intervene, however, Plaintiff must allege facts sufficient to show that Defendants Marientes, Yap, Crepso, and Joyner each: (1) "was aware that [he] faced a specific risk of harm from the other prison official's use of excessive force"; (2) "had a reasonable opportunity to intervene to stop it," *Solano v. Davis*, No. CV 13-01164-ODW, 2014 WL 6473651, at *7 (C.D. Cal. Nov. 17, 2014) (citing *Ting v. United States*, 927 F.2d 1504, 1511-12 (9th Cir. 1991)); *cf. Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) ("[O]fficers can be held liable for failing to intercede only if they had an opportunity to intercede"); and (3) in choosing not to intervene, acted with deliberate indifference to a serious risk to Plaintiff's health or safety. *Labatad*, 714 F.3d at 1160; *see also Jacques v. Gonzalez*, No. CV 16-6862-GW (KS), 2018 WL 7916365, at *4 (C.D. Cal. Dec. 12, 2018*), report and recommendation adopted*, No. CV 16-6862-GW (KS), 2019 WL 1432479 (C.D. Cal. Mar. 29, 2019).

Plaintiff's FAC fails to state an Eighth Amendment failure to protect claim against either Defendant Yap or Marientes. As he alleged in his original Complaint, Plaintiff re-alleges that Sgt. Marientes's "high-five" with Officer Hultz on July 12, 2107 "illustrates … his deliberate indifference" to Hultz's "threatening" and "contemptuous behavior" outside the canteen. *See* FAC at 28. Plaintiff also contends Yap was "legally obligated" to sign a CDCR Form 22 Plaintiff presented to him complaining about Marientes's actions on July 12, 2017, and by refusing to do so left him "exposed" to a "risk of damage to [his] future health." *See* FAC at 27. However, Plaintiff provides no further factual allegations to show that Marientes or Yap were aware that Hultz and Plaintiff's canteen encounter on July 12, 2017 posed a substantial or obvious risk of serious harm to him. *See Farmer*, 511 U.S. at 837, 842; *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1078 (9th Cir.2013) ("Plaintiffs must demonstrate that the risk was obvious or provide other circumstantial or direct evidence that the prison officials were aware of the substantial risk to the [prisoner's] safety."). Nor does Plaintiff allege Marientes or Yap were physically present or had any reasonable "opportunity to intercede" when Hultz,

Jaramillo, Pamplin, and Strong are alleged to have personally used excessive force against him two days later in the dining hall. *See Cunningham*, 229 F.3d at 1289.

However, unlike his original Complaint, Plaintiff's FAC *does* provide further factual support to plausibly allege an Eighth Amendment claim against Defendants Crespo and Joyner. Specifically, Plaintiff claims both Crespo and Joyner were present and that he "turned to" Crespo and Joyner and made "specific plea[s] … for help" when Hultz first hit his hands and knocked his writing materials to the ground on July 14, 2017. *See* FAC at 12, 27, 28. Plaintiff further contends Crespo "failed to stop the continued beating and helped form a semi-circle around the officers, as to block the view of inmate witnesses," and Joyner "stood and watched Hultz cover [his] mouth as [he] lay prone." *Id.* at 27-28. Liberally construed, the Court now finds Plaintiff's Eighth Amendment allegations against Correctional Officer Crespo and Joyner sufficient to state a plausible claim for relief under the Eighth Amendment. *See Robins,* 60 F.3d at 1442; *Olguin v. Gastelo*, No. 2:20-CV-06048-PAM-AA, 2020 WL 6203572, at *1 (C.D. Cal. Oct. 22, 2020) (finding allegations that one correctional officer "did nothing to stop" his fellow officer pull Plaintiff's arms up, twist his hands, and slam his head into a wall sufficient to survive the initial screening required by 28 U.S.C. § 1915(e)(2) and § 1915A).

D.     Counts 4 & 5

In Counts 4 and 5 Plaintiff claims Defendants Garza, Fink, Luna, Avila, Olivarria, Self, Ortiz, and Paramo "falsely charg[ed] him with a disciplinary violation" in retaliation "for filing appeals." *Id.* at 28-31. He further contends Defendants Marientes, Cottrell, Garza, Luna, Fink, Legier, Ortiz, Paramo and Kernan acted with "deliberate indifference" to his suffering by ignoring his claims of retaliation in violation of both the Eighth and Fourteenth Amendments. *Id.* at 31-32. But regardless of how Plaintiff has re-categorized these allegations in response to the Court's initial screening Order, they still fail to state a plausible claim for relief under the First, Eighth, or Fourteenth Amendments, and must be again dismissed sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b).

/ / /

1. *Garza, Fink, Luna, Avila, Olivarria, Self & Ortiz*[18] *– Retaliation*

Plaintiff first claims all Defendants Garza, Fink, Luna, Avila, Olivarria, Self and Ortiz filed "false" disciplinary charges against him in RVR Log No. 2992331, which accused of committing battery on a peace officer (Hultz) in order to retaliate against him for "filing grievances." *See* FAC at 28. But none of these officials issued the RVR— Hultz did. *See* Pl.'s Ex. 10, ECF No. 5 at 27. Instead, Defendants Garza, Fink, Luna, Avila, Olivarria, Self and Ortiz are alleged as a group to have either participated in the investigation, classification, or disciplinary proceedings which ultimately culminated in his conviction on August 13, 2017, or to have insufficiently responded to his CDCR 602 Form 22s, and/or his CDCR 602 Inmate Appeal Log No. RJD 17-05116 / LAC Log No. 17-04275. *See, e.g.,* FAC at 10, 16-23; Pl.'s Exs. 4, 5, 10, 13.

As noted above, a viable claim of First Amendment retaliation requires Plaintiff to allege facts sufficient to show that each of these Defendants: (1) took some adverse action against him (2) because of (3) his protected conduct, and that such action (4) chilled the exercise of his First Amendment rights, and (5) did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68. As pleaded, Plaintiff's FAC does allege facts sufficient to show that he engaged in protected conduct on July 12, 2017 when he attempted to submit several CDCR Form 22s complaining about Hultz's and Marientes's "employee misconduct" related to the canteen incident. *See* FAC at 10-11; *Watison*, 668 F.3d at 1114 ("The filing of an inmate grievance is protected conduct."); *O'Brien v. Garcia*, No. 3:19-CV-01113-JAH-MDD, 2019 WL 4015647, at *8 (S.D. Cal. Aug. 26, 2019) (finding prisoner's claims of having submitted a "series" of CDCR Form 22 requests and CDCR 602 appeals sufficient to show he was engaging in protected conduct).

---

[18] Plaintiff includes Warden Paramo in this claim, but the Court has already found his allegations against Paramo insufficient to plausibly allege personal liability with respect to any of his purported causes of action. *See supra* § IV.A.

Plaintiff further alleges facts sufficient to plausibly show *Hultz* took "adverse action" against him by issuing RVR Log No. 2992331 on July 14, 2017, charging him with battery on a peace officer, and resulting in Sgt. Cottrell's decision to place him in ASU pending the investigation and disciplinary hearing related to those charges. *See* FAC at 16; Pl.'s Ex. 10, ECF No. 5 at 27-28; *Watison*, 668 F.3d at 1115 (placement in administrative segregation constitutes adverse action).

However, Plaintiff does *not* allege facts to plausibly show Defendants Garza, Fink, Luna, Avila, Olivarria, Self, or Ortiz took any adverse action against him with respect to his disciplinary proceedings or his CDCR 602 appeals regarding those proceedings *because* he engaged in any protected conduct. *See Pratt v. Rowland*, 65 F.3d 802, 809 (9th Cir. 1995) (plaintiff asserting retaliation claim bears the burden of pleading and proving retaliatory motive); *Brodheim v. Cry*, 584 F.3d 1269, 1271 (9th Cir. 2009) (causation element of a First Amendment retaliation claim requires prisoner to allege his protected conduct was the substantial or motivating factor underlying the defendant's adverse action). Based on the allegations in his FAC, Plaintiff has not plausibly shown that the submission of his CDCR Form 22s, or the filing of any subsequent CDCR 602 appeal was the "but-for" cause of any alleged action taken by Defendants Garza, Fink, Luna, Avila, Olivarria, Self or Ortiz. *Id.*; *see also Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989); *Capp v. Cty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) ("[P]laintiff must show that the defendant's retaliatory animus was 'a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.'") (citation omitted). "Retaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, Plaintiff must allege sufficient facts to plausibly suggest a nexus between the two." *Rojo v. Paramo*, No. 13cv2237, 2014 WL 2586904, at *5 (S.D. Cal. June 10, 2014) (citing *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claims cannot rest on the logical fallacy of post hoc, ergo propter hoc, *i.e.*, "after this, therefore because of this")). Plaintiff's FAC fails to allege any such nexus, and "mere speculation that

defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014); *see also Morman v. Dyer*, No. 16-CV-01523-SI, 2018 WL 2412183, at *7 (N.D. Cal. May 29, 2018).

Instead, Plaintiff's purported retaliation claims against Defendants Garza, Fink, Luna, Avila, Olivarria, Self, and Ortiz are essentially procedural, and as such, they appear to be an attempt to re-package his original Fourteenth Amendment due process claims related to the disciplinary investigations, proceedings, hearing, and appeals that followed the issuance of RVR Log No. 2992331, as a separate cause of action for retaliation under the First Amendment. For example, Plaintiff only contends broadly that Garza "refused to address [his] staff complaints" and falsely responded to a CDCR Form 22 addressed to him, *see* FAC at 29; Luna and Fink "participated in the cover up, intimidation, [and] machinations of other prison officials" during his RVR proceedings, *id.* at 29-30; Avila improperly handled or failed to respond to "several" CDCR Form 22s, *id.* at 30; Olivarria and Self "erroneous[ly] deni[ed]" his appeals and performed their jobs as inmate appeals coordinators "sloppily," *id.*, and Ortiz "failed to act" in response to unspecified letters Plaintiff wrote "concerning the unavailability" and "confusing nature" of the administrative process, and "illegally dispositioned" the appeal of his ASU confinement. *Id.*

But these purported wrongs, previously alleged as Count 3 in Plaintiff's original Complaint, were found insufficient to state a plausible claim for relief under the Due Process Clause of the Fourteenth Amendment. *See* ECF No. 8 at 16-24. Plaintiff does not now include any non-conclusory factual allegations which plausibly show these Defendants instead violated the First Amendment by playing any role in the initial decision to either charge him with battery on a peace officer, retain him in administrative segregation while those charges were investigated, or by otherwise participating in a disciplinary process or grievance procedure that ultimately determined or affirmed his conviction for battery on a peace officer. *See Pratt*, 65 F.3d at 809.

/ / /

For these reasons, Plaintiff's First Amendment retaliation claims as alleged against Defendants Garza, Fink, Luna, Avila, Olivarria, Self and Ortiz must be dismissed sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

> 2.   *Marientes, Cottrell, Garza, Luna, Fink, Legier, & Ortiz[19] – Eighth & Fourteenth Amendments*

Finally, Plaintiff alleges Defendants Marientes, Cottrell, Garza, Luna, Fink, Legier, and Ortiz acted with "deliberate indifference to [his] suffering" when they ignored his repeated claims of retaliation, "unreasonably allowed him to be charged with a disciplinary action," and disregarded his mental health needs by placing him in ASU instead of "allow[ing] [him] to return to the yard." *See* FAC at 31.

First, and while it is not altogether clear, the Court liberally construes Plaintiff's claim of "deliberate indifference" as an attempt to allege an Eighth Amendment claim with respect to his disciplinary conviction and sentence. *See Hebbe*, 627 F.3d at 342 & n.7. However, "[t]hreadbare recital[ ] of the elements of a[n] [Eighth Amendment] cause of action, supported by merely conclusory statements, do not suffice" to allege a plausible entitlement to relief. *Iqbal*, 556 U.S. at 678; *see also Ivy v. Wingo*, No. 3:20-CV-01345-CAB-AHG, 2020 WL 5709278, at *8 (S.D. Cal. Sept. 24, 2020) (sua sponte dismissing prisoner's conclusory challenge to disciplinary conviction as "cruel and unusual punishment" pursuant to 28 U.S.C.C. § 1915(e)(2) & 1915A); *see also Cole v. Sisto*, 2010 WL 2303257, at *2 (E.D. Cal. June 7, 2010) ("To the extent that [plaintiff] argues that the particular forms of discipline imposed on him ... (the forfeiture of time credits, the adding of points to his classification score, or the temporary loss of certain yard and canteen privileges) was so harsh as to be cruel and unusual, such a claim is plainly frivolous."); *Galindo v. Cockrell*, 2001 WL 1057982, at *4 (N.D. Tex., Aug. 31,

---

[19] Plaintiff includes Secretary Kernan in this claim, but the Court has already found his allegations against Kernan insufficient to plausibly allege personal liability with respect to any of his purported causes of action. *See supra* § IV.A.

2001) ("Galindo's claim that the revocation of his earlier earned credits constitutes cruel and unusual punishment in violation of the Eighth Amendment is frivolous and requires no discussion.").

Second, while Plaintiff also invokes the Fourteenth Amendment's Due Process clause with respect to his disciplinary hearing and claims Defendants Marientes, Cottrell, Garza, Luna, Fink, Legier, and Ortiz's actions with respect to his conviction for battery on a peace officer via RVR Log No. 2992331 imposed "atypical and significant hardships" upon him, *see* FAC at 28 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)), he continues to allege no facts to plausibly support this legal conclusion. *See Iqbal*, 556 U.S. at 678. As the Court noted in its April 29, 2020 Order, the deprivations Plaintiff continues to allege to have suffered as a result of his disciplinary conviction, *i.e.*, lost custody credit, a referral to Classification Committee, and the loss of 90 days of canteen, phone, dayroom, and package privileges, *see* Pl.'s Ex. 10, ECF No. 5 at 39–41, remain insufficient to state plausible entitlement to relief under the Fourteenth Amendment. *See Iqbal*, 556 U.S. at 678.

For example, as the Court noted in its April 29, 2020 Order, classification at a higher custody level does not by itself place an "atypical or significant hardship" on an inmate sufficient to give rise to a protected liberty interest. *See Sandin*, 515 U.S. at 486 (placing an inmate in administrative segregation for thirty days "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (finding no "atypical and significant deprivation" where prisoner failed to allege conditions at level IV prison differed significantly from those at a level III prison); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (inmates do not have a liberty interest in their classification status); *Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1985) (prison authorities may change a prisoner's "place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another" without violating due process).

Nor do the other lost privileges Plaintiff cites as a result of his disciplinary conviction, *e.g.,* a 90-day placement in "Privilege Group C," and limitations on his access to the canteen, phone, day room, or package privilege, see Pl.'s Ex. 10, ECF No. 5 at 39–41, constitute "atypical and significant" hardships. *See Sandin,* 515 U.S. at 484; Cal. Code Regs., tit. 15 § 3044(f)(2) (describing "Privilege Group C" "privileges and non-privileges"); *see also Sanchez v. Miller*, 2016 WL 536890, at *5 (S.D. Cal. 2016) ("C-status deprivations were limited in duration and type, and these limited deprivations do not constitute a hardship that is atypical and significant 'in relation to the ordinary incidents of prison life.'"), *report and recommendation adopted,* 2016 WL 524438 (S.D. Cal. 2016); *Randle v. Melendrez*, 2017 WL 1197864, at *4 (C.D. Cal. 2017) (finding "four months in administrative segregation as a result of the false RVR," during which plaintiff was deprived of contact visits, "packages, canteen, unrestricted yard, phone calls and personal property" insufficient to implicate a protected liberty interest under *Sandin*), *report and recommendation adopted*, 2017 WL 1199719 (C.D. Cal. 2017); *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) ("[A] prisoner has no constitutional right to a particular classification status"); *Wyatt v. Swearingen*, 2010 WL 135322, at *8-9 (N.D. Cal. 2010) (no liberty interest in prisoner's year-long C-status placement); *Washington v. Cal. Dep't of Corrs. & Rehab.*, 2010 WL 729935, at *1 (E.D. Cal. 2010) (no liberty interest in delayed release from C-status); *see also Steffey v. Orman*, 461 F.3d 1218 (10th Cir. 2006) (restriction on inmates' ability to receive money from outside sources was not an "atypical or significant hardship" under *Sandin*).

Finally, while Plaintiff "begs the Court to withhold judgment on his Due Process claims as he petitions the State court for habeas corpus … in light of the *Heck* rule," *see* FAC at 32, such a stay is both unnecessary and improper—for he fails to sufficiently allege a plausible due process claim for relief in the first place.[20] *See Iqbal*, 556 U.S. at

---

[20] Under *Heck v. Humphrey*, 512 U.S. 477 (1994), if judgment in Plaintiff's favor would necessarily imply the invalidity of a criminal conviction or sentence, his claim must be dismissed unless he can demonstrate

678; *see also Trimble v. City of Santa Rosa,* 49 F.3d 583, 586 (9th Cir. 1995) (court should dismiss claims barred by *Heck* without prejudice "so that [the plaintiff] may reassert his claims if he ever succeeds in invalidating his conviction.").

### E.   Summary

For all the reasons discussed, the Court dismisses all claims alleged in Plaintiff's FAC against Defendants Kernan, Paramo, Asuncion, Marientes, Cottrell, Fink, Luna, Garza, Avila, Olivarria, Self, Legier, Ortiz, and Yap sua sponte based on Plaintiff's repeated failures to state a claim against them pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) and denies further leave to amend. *See Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.").

Because the Court has found Plaintiff's First Amendment retaliation and Eighth Amendment excessive force allegations against Defendants Hultz, Jaramillo, Strong, Pamplin, Crespo, and Joyner sufficient to survive the "low threshold" set for sua sponte screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), however, *see Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 679, the Court will direct the U.S. Marshal to effect service of summons with respect to Plaintiff's FAC upon these Defendants only.[21] *See* 28

---

that the conviction or sentence has already been invalidated. *Heck*, 512 U.S. at 486-87. *Heck's* favorable-termination rule applies to prison disciplinary proceedings involving the loss of good-time credits. *See Edwards v. Balisok*, 520 U.S. 641, 645-46 (1997). The exhibits Plaintiff has requested this Court incorporate by reference still plainly show he was assessed a 150-day non-restorable credit forfeiture as a result of his conviction. *See* Pl.'s Ex. 10, ECF No. 5 at 39-41. Thus, Plaintiff's Fourteenth Amendment remain subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A for this additional reason. *See Smith v. City of Hemet,* 394 F.3d 689, 695 (9th Cir. 2005) ("[I]f a … conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed."); *Heck*, 512 U.S. at 487 ("A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983."); *see also Guerrero v. So*, No. 3:20-CV-01117-GPC-MSB, 2020 WL 6449194, at \*9 (S.D. Cal. Nov. 3, 2020).

[21] Plaintiff is cautioned, however, that "the sua sponte screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a defendant] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal ... if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

## V.   Conclusion and Orders

Accordingly, the Court:

1.     **DISMISSES** all claims alleged in Plaintiff's Amended Complaint against Defendants Kernan, Paramo, Asuncion, Marientes, Cottrell, Fink, Luna, Garza, Avila, Olivarria, Self, Legier, Ortiz, and Yap sua sponte for failure to state a claim and **DIRECTS** the Clerk of the Court to terminate these Defendants as parties to this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

2.     **DIRECTS** the Clerk to issue a summons as to Plaintiff's Amended Complaint (ECF No. 10) upon Defendants Hultz, Jaramillo, Strong, Pamplin, Crespo, and Joyner and forward it to Plaintiff along with a blank U.S. Marshal Form 285s for these Defendants only. In addition, the Clerk will provide Plaintiff with a certified copy of this Order, a certified copy of the Court's April 29, 2020 Order Granting IFP (ECF No. 8), his Amended Complaint (ECF No. 10), and a summons so that he may serve Defendants Hultz, Jaramillo, Strong, Pamplin, Crespo, and Joyner. Upon receipt of these materials, which comprise the "IFP Package," Plaintiff must complete the Form 285s provided by the Clerk as completely and accurately as possible, *include an address where Defendants Hultz, Jaramillo, Strong, Pamplin, Crespo, and Joyner may each be served*, *see* S.D. Cal. CivLR 4.1.c, and timely return them to the United States Marshal according to the instructions the Clerk provides in the letter included in his IFP package.

3.     **ORDERS** the U.S. Marshal to serve a copy of the Amended Complaint and summons upon Defendants Hultz, Jaramillo, Strong, Pamplin, Crespo, and Joyner upon receipt and as directed by Plaintiff on the completed USM Form 285s, <u>and to promptly file proof of service, or proof of any attempt at service unable to be executed, with the Clerk of Court</u>. *See* S.D. Cal. CivLR 5.2. All costs of that service will be advanced by the

United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

4. **ORDERS** Defendants Hultz, Jaramillo, Strong, Pamplin, Crespo, and Joyner once served, to reply to Plaintiff's Amended Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility  under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

5. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants Hultz, Jaramillo, Strong, Pamplin, Crespo, and Joyner, or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on the Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon the Defendants, may be disregarded.

**IT IS SO ORDERED**.

Dated: February 8, 2021

_Larry A. Burns_
Hon. Larry Alan Burns
United States District Judge

3:19-cv-02355-LAB-DEB