UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDLY A. ATHERLEY, II,<br><br>                    Plaintiff,<br><br>v.<br><br>SCOTT KERNAN, et al.,<br><br>                    Defendants. | Case No.: 19-cv-2355-LAB-DEB<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS**<br><br>**[DKT. NO. 24]** |

The Court submits this Report and Recommendation to United States District Judge Larry Alan Burns pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1.c and 72.3.e.

**I.    INTRODUCTION**

On December 9, 2019, Plaintiff Edly A. Atherley, II filed a Complaint pursuant to 42 U.S.C. § 1983. Dkt. No. 1. The First Amended Complaint ("FAC") alleges Defendants used excessive force against Plaintiff in violation of his First and Eighth Amendment rights. Dkt. No. 1. Defendants move to dismiss, arguing: (1) Plaintiff failed to exhaust his administrative remedies; and (2) Plaintiff's claims are barred pursuant to *Heck v.*

*Humphrey*, 512 U.S. 447 (1994). Dkt. No. 24 ("Motion").[1] Plaintiff opposes Defendants' Motion to Dismiss, and Defendants replied. Dkt. Nos. 27, 28.

For the reasons set forth below, the Court recommends GRANTING in part and DENYING in part Defendants' Motion.

## II.   FACTUAL ALLEGATIONS

The following facts are taken from Plaintiff's FAC and incorporated exhibits[2] and are limited to the claims related to the pending Motion.[3]

### A. July 12, 2017 Incident and Complaint Against Hultz

At all relevant times, Plaintiff was incarcerated at Richard J. Donovan Correctional Facility ("RJD"). Dkt. No 10. at 1, 8.

On July 12, 2017, Plaintiff "informed the canteen manager of partial, unfair and discriminatory discrepancy that excluded non-white inmates from shopping." *Id.* at 8. Plaintiff sat at a nearby table to "take[e] contemporaneous notes on the unfolding events" at the canteen. *Id.* at 9. Defendant Officer M. Hultz then "incite[d] the crowd of inmates by telling them that the canteen would be closed" because of Plaintiff. *Id.* Hultz grabbed Plaintiff's identification card and "threw [it] out onto the yard and into the dirt." *Id.* When Plaintiff requested Hultz's name, Hultz "mock[ed] and gesture[d] at . . . plaintiff to provoke violence," and "glare[d] at . . . plaintiff in a menacing fashion." *Id.*

---

[1] When referencing page numbers for documents filed with the Court, the Court's citation refers to the page numbers assigned by the Court's CM-ECF system.

[2] On February 8, 2021, the Court granted Plaintiff's request to incorporate the 325 pages of exhibits at Dkt. No. 5 he submitted in support of his original complaint, to "be attached" to his FAC. Dkt. No. 12 at 3 n.2.

[3] For purposes of this Motion, the Court assumes the truth of the allegations in Plaintiff's FAC. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) ("On a motion to dismiss for failure to state a claim, the court must presume all factual allegations of the complaint to be true . . . .").

Plaintiff reported the conduct to Hultz's supervisor and completed a prisoner complaint Form 22. *Id.* at 9–10.

### B. July 14, 2017 Incident and Alleged Excessive Force

On July 14, 2017, Plaintiff was on his way to the dining hall with an index card, pen, and the Form 22. *Id.* at 11. Defendant Officer Crespo pointed Plaintiff out to Hultz. *Id.* Hultz approached Plaintiff and asked, "[s]o, where's my write-up? I'm waiting to sign it." *Id.* Plaintiff handed Hultz the Form 22. *Id.* Hultz became angry and placed it in his pocket. *Id.* Plaintiff requested Hultz sign and return the form, but Hultz refused. *Id.* Plaintiff asked Crespo for assistance retrieving the form. *Id*. Crespo responded, "[g]o eat first, then I'll get it back for you." *Id.*

When leaving the dining hall, Plaintiff again requested the Form 22 from Hultz, who again refused. *Id.* at 12. Plaintiff then pulled out his index card and pen "to document yet another adverse interaction with Hultz." *Id*.

"Hultz then violently assault[ed] [P]laintiff by hitting his hands to prevent him from writing, [and] knocking the items to the ground." *Id*. Plaintiff turned to Crespo "seeking her help," but she "did not intervene." *Id*. As Plaintiff bent down to pick up his card and pen, Hultz "grabbed [him] by the back of his shirt" with one hand and "by his throat" with the other. *Id*. Hultz "squeezed" and "obstruct[ed]" Plaintiff's breathing. *Id*. at 12–13. Plaintiff "believed that any attempt to defend himself would provoke further violence against him . . . ." *Id.* at 13.

Hultz "became increasingly angry," "violently ran plaintiff into a concrete wall," and "pin[ned] plaintiff's arm between the wall and plaintiff's body." *Id*. Hultz commanded Plaintiff to "cuff up." *Id.* Plaintiff was unable to comply because "Hultz's body precluded him from placing his hands behind his back." *Id.*

Hultz then "maliciously body-slammed plaintiff into the ground." *Id*. Defendants Officers B. Strong and B. Jarmillo came, put their weight on Plaintiff's back, head, and spine, and "beat [Plaintiff] with their knees and elbows." *Id*. at 13–14. "Jarmillo repeatedly slammed plaintiff's head into the ground." *Id*. at 14.

Plaintiff was "cuffed," "laid prone," and "repeatedly declared that he was 'not resisting.'" *Id.* Jarmillo, however, claimed Plaintiff's body was "tense." *Id.* "Plaintiff continued to beg observing officers [including Defendant V. Joyner] for assistance . . . ." *Id.* at 14, 28. Specifically, he stated, "please help me. [Hultz is] trying to cover up a complaint." *Id.* at 14. However, Crespo and Joyner "helped form a semi-circle around the officers . . . to block the view of inmate witnesses." *Id.* at 27–28. Hultz also "silenced plaintiff by placing his gloved hand over plaintiff's mouth." *Id.* at 14.

Defendants Officers D. Pamplin and Strong escorted Plaintiff to the gym. *Id.* Pamplin and Strong "deliberately and maliciously tightened the cuffs around the plaintiff's wrists restricting the flow of blood." *Id.* They "interlocked their arms through plaintiff's," "applied pressure to [his] shoulder," and "forc[ed] his body to bend forward." *Id.* Pamplin and Strong "slammed" Plaintiff "into a glass window" and "thr[ew]" Plaintiff into a cell. *Id.* at 14–15. When Plaintiff "expressed that their methods were not needed," Strong "threaten[ed] to 'drop' plaintiff and continue to beat him." *Id.* at 14. "Plaintiff continued to plead with officers to remove restraints and expressed their behavior was 'unethical' and 'unjust.'" *Id.* at 15. But Strong "mock[ed]" Plaintiff saying, "I can't hear you Martin Luther King 'cuz [sic] I'm just a dumb white boy. What's justice?" *Id.*

### C. Hultz's Version of the July 14, 2017 Incident

Hultz's description of the July 14, 2017 incident differs from Plaintiff's. *See* Dkt. No. 5 at 27. Hultz submitted a written report stating, when Plaintiff approached him to sign the Form 22, Hultz "advised [Plaintiff] that he [was] impeding [Hultz] from [his] job duties." *Id.* Hultz "placed the form in [his] . . . pocket," "instructed" Plaintiff to go inside the chow hall, and advised Plaintiff he would return the form signed when Plaintiff finished eating. *Id.* Plaintiff refused, "raise[d] his voice[,] and stated . . . 'FUCK YOU. I'm not going anywhere until you give me that [F]orm 22 back.'" *Id.* Hultz "ordered [Plaintiff] to turn around and cuff up to which he refused." *Id.* Hultz stepped behind Plaintiff and "again ordered him to place his hands behind his back as [Hultz] placed [his] left hand on

[Plaintiff's] left shoulder area." *Id.* Hultz reached for Plaintiff's right wrist and Plaintiff "spun his body to his left striking [Hultz] with his elbow on [Hultz's] left bicep area." *Id.*

In response, Hultz "took [Plaintiff] to the ground onto his stomach . . . ." *Id.* Plaintiff "laid on top of his hands refusing [orders] to be placed in handcuffs." *Id.* Hultz held Plaintiff on the ground and "called a code 1 via [his] radio and observed responding [Defendants Strong and Jaramillo] take custody of [Plaintiff]." *Id.* "Strong placed [Plaintiff] in handcuffs." *Id.* Defendant Pamplin "arrived on scene and he and [Strong] . . . escorted [Plaintiff] . . . to the Facility D gym for holding cell placement." *Id.*

### D. Rule Violation Report and Subsequent Proceedings

Following the incident, Hultz issued Plaintiff a Rules Violation Report ("RVR") charging Plaintiff with battery on a peace officer. *Id.* at 27–28. Plaintiff pled not guilty. *Id.* at 37.

On August 13, 2017, Lieutenant T. Lewandowski held a Disciplinary Hearing. *Id.* at 33. Lewandowski considered the following evidence: (1) Hultz's "written report" describing "how he was battered on his left bicep by [Plaintiff]"; (2) "Officer reports . . . reveal[ing] that Officer B. Strong also witnessed [Plaintiff] strike Officer M. Hultz"; (3) "Officer M. Hultz's . . . Medical Evaluation reveal[ing] that he sustained an injury directly in the left bicep where he was struck by [Plaintiff]"; and (4) Plaintiff "did not present any convincing evidence to refute the employees['] written report or this charge." *Id.* at 37. Lewandowski found Plaintiff "Guilty as Charged," and, among other consequences, assessed Plaintiff a 150-day non-restorable credit forfeiture. *Id.* at 37–39.

On August 25, 2017, Plaintiff appealed the guilty finding, which was "bypassed to second level review." *Id.* at 53. On November 8, 2017, the Office of Appeals denied Plaintiff's appeal at the second level of review. *Id.* at 58–61. On June 15, 2018, the Office of Appeals reaffirmed the decision on the third level of review. *Id.* at 51–52.

//
//
//

**E. Plaintiff's Exhaustion Allegations**

On July 24, 2017, ten days after the events, Plaintiff "completed a formal request for an official change of decision, action, or policy on a Form 602" describing the incidents and "personally handed" the Form 602 to an investigating officer. Dkt. No. 10 at 19.[4]

On September 4, 2017, Plaintiff submitted a Form 22, "respectfully requesting the log # of the 602 I filed, dated July 24, 2017. [The investigating officer] gave it to the Appeals Coordinator." Dkt. No. 5 at 105. On September 20, 2017, replying to a staff response pertaining to a separate appeal, Plaintiff submitted a "Request for Supervisor Review" stating, "[t]his is **Not** the 602 to which I am referring. Please contact [the investigating officer] to whom my July 24th appeal was given. [This officer] was given my appeal in person. . . . To be clear, I should have two (2) appeals in RJD's system." *Id.*

On September 20, 2017, Plaintiff submitted another 602 Appeal Form re-alleging the grievances from his July 24, 2017 Form 602, stating it was "re-written upon advisement of Classification Committee Review on 14 September 2017. Original appeal went to Appeals Coordinator . . . ." *Id.* at 119–120.

On September 28, 2017, Plaintiff received a "Supervisor's Review" requesting "details as to what the appeal concerns." *Id.* at 105. On October 11, 2017, Plaintiff replied, "[t]his is a continuation of our conversation regarding the 602 . . . that I submitted to [the investigating officer] on July 24, 2017. As you requested, I have attached additional details as to the concerns addressed in the 602." *Id.* at 107.

On November 5, 2017, Plaintiff submitted a Form 22 entitled "Missing 602/602A" stating, "*Attention: RJD Appeals* On 24 July 2017, I gave my investigative employee . . . a 602 and 602a. This was an emergency appeal. My question is: Do you have in your

---

[4] Plaintiff claims the document at Dkt. No. 5 at 15 is "a true and correct transcription of the Form 602 handed to [the investigating officer]. There was no access to a copy machine in [Administrative Segregation Unit] at RJD." Dkt. No. 27 at 13 n. 2; *see also* Dkt. No. 10 at 19 ("Plaintiff made a handwritten copy for his records") (citing Dkt. No. 5 at 15)).

records an appeal from me with an initial "Date Submitted" of 24 July 2017? If not, I preserve the right to appeal this as a completely separate matter. If yes, may I please have THAT Appeal log number?" *Id.* at 109.

On November 27, 2017, staff responded, "Your appeal was received on 9/7/17 and cancelled due to time constraints. The matter was referred to the facility for review . . . ." *Id.* On December 21, 2017, Plaintiff replied "[n]o Appeal per appellant's record was ever submitted around that time. Please provide a copy of '9/7/17' Appeal . . . ." *Id.*

On July 9, 2018, RJD's warden wrote Plaintiff a letter stating, "[a] check of our Inmate Appeals Tracking System (IATS) notes a staff complaint was submitted by you on August 25, 2017 [received by RJD on September 7, 2021] . . . . [I]t was screened out noting you did not meet time constraints for filing the appeal as you claim the excessive use of force happened on July 14, 2017 . . . ." *Id.* at 103.

### III. PROCEDURAL BACKGROUND

On December 9, 2019, Plaintiff filed his initial Complaint in this case alleging, among other claims, violations of his constitutional rights arising out of the July 14, 2017 incidents. Dkt. No. 1.

On June 15, 2020, following the Court's sua sponte screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) (Dkt. No. 8), Plaintiff filed his FAC. Dkt. No. 10. The FAC alleges First, Eighth, and Fourteenth Amendment violations against 18 correctional and appeals officials at RJD and California State Prison, Los Angeles County and the former Secretary of the California Department of Corrections and Rehabilitation ("CDCR"). *See id.* at 1–6.

On February 8, 2021, the Court screened Plaintiff's FAC and dismissed all claims for relief "with respect to any Defendant *except* Hultz, Strong, Jaramillo, Pamplin, Crespo, and Joyner." Dkt. No. 12 at 13. The Court "found Plaintiff's First Amendment retaliation and Eighth Amendment excessive force allegations against Defendants Hultz, Jaramillo, Strong, Pamplin, Crespo, and Joyner sufficient to survive the 'low threshold' set for sua sponte screening . . . ." *Id.* at 24.

On June 7, 2021, Defendants filed the Motion. Dkt. No. 24. Defendants' Motion asserts Plaintiff did not exhaust his claims, and they are barred under *Heck*. Dkt. No. 24 at 14, 17.

## IV. LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court must "construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "A complaint may be dismissed as a matter of law for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

The Court must liberally construe a *pro se* complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Before dismissing a *pro se* civil rights complaint for failure to state a claim, the plaintiff should be given a statement of the complaint's deficiencies and an opportunity to cure them unless it is clear the deficiencies cannot be cured by amendment. *Eldridge v. Block*, 832 F.2d 1132, 1135–36 (9th Cir. 1987).

## V. DISCUSSION

Defendants move to dismiss Plaintiff's FAC on two grounds: (1) "Plaintiff failed to exhaust available administrative remedies"; and (2) "Plaintiff's claims are barred by the favorable-termination rule set forth in *Heck* . . . ." Dkt. No. 24 at 14, 17.

### A. Exhaustion

Defendants first argue Plaintiff failed to exhaust his administrative remedies before filing suit. *Id.* at 13–17. Defendants contend any administrative claim Plaintiff submitted: (1) was properly screened out as untimely; (2) did not relate to the July 14, 2017 incidents; and/or (3) was not made against the proper Defendants. *Id*. at 16–17. In opposition, Plaintiff

asserts he timely submitted a Form 602 describing the alleged misconduct. Dkt. No. 27 at 13–14. He further claims, "prison officials led [Plaintiff] to believe that [this] Form had been 'lost.'" *Id*. at 14.

The Prison Litigation Reform Act of 1995 ("PLRA") states, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any . . . prison . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "This exhaustion requirement is mandatory." *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

Failure to exhaust is an affirmative defense under the PLRA; therefore, a prisoner is not required to plead and demonstrate exhaustion in the complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Because defendants must "produce evidence proving failure to exhaust in order to carry their burden," failure to exhaust is a matter usually addressed in a motion for summary judgment under Federal Rule of Civil Procedure 56. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Id*.

Plaintiff's FAC does not clearly establish a failure to exhaust. To the contrary, Plaintiff's FAC alleges he timely submitted an administrative grievance regarding the July 14, 2017 incidents, but RJD officials lost it. Dkt. Nos. 10 at 19; 5 at 105–109; *see Cherer v. Williams*, No. 08-cv-771-AG-OP, 2010 WL 7697474, at *5 (C.D. Cal. July 27, 2010) (denying motion to dismiss where plaintiff contended "prison officials either disregarded or lost his timely administrative grievance requests"), *report and recommendation adopted*, 2011 WL 2516449 (June 18, 2011); *see also Hannah v. Ramirez*, No. 19-cv-787-LAB-BLM, 2020 WL 39196, at *2 (S.D. Cal. Jan. 2, 2020) ("[A] motion to dismiss is proper only where the plaintiff's complaint contains facts establishing his failure to exhaust administrative remedies, resulting in no disputed facts on the issue of exhaustion."), *report and recommendation adopted*, 2020 WL 475297 (Jan. 28, 2020).

Although Defendants argue Plaintiff's various appeals do not name all Defendants, Dkt. No. 24 at 16–17, "[t]he grievance process is only required to 'alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.'" *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) (quoting *Jones v.* 549 U.S. 199, 219 (2007)). Assuming Plaintiff submitted the administrative grievance he alleges, he adequately put prison officials on notice of the events alleged in the FAC.

Because Plaintiff's FAC does not clearly establish he failed to exhaust his administrative remedies, the Court recommends denying Defendants' Motion to Dismiss on this ground.

### B. *Heck*

Defendants also argue Plaintiff's excessive force and retaliation (using excessive force) claims are barred by *Heck's* "favorable-termination rule." Dkt. No. 24 at 17–18. Specifically, Defendants contend "a judgment in Plaintiff's favor would necessarily imply the invalidity of his rules violation conviction and his subsequent 150 days of credit loss for the battery on Defendant Hultz." *Id*. at 18. In opposition, Plaintiff argues "an alleged battery on Hultz followed by a response by Defendants that was unreasonable or unnecessary under the circumstances are not mutually exclusive occurrences." Dkt. No. 27 at 26.

"[A] state prisoner cannot use a § 1983 action to challenge the 'fact or duration of his confinement,' because such an action lies at the 'core of habeas corpus.'" *Simpson v. Thomas,* 528 F.3d 685, 693 (9th Cir. 2008) (quoting *Preiser v. Rodriguez,* 411 U.S. 475, 487, 489 (1973)). Thus, where a § 1983 action alleges constitutional violations that would "render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. at 486–87 (internal citation omitted).

*Heck* applies to prison disciplinary proceedings that resulted in the loss of good-time credits. *Edwards v. Balisok,* 520 U.S. 641, 646–48 (1997) (holding a due process challenge to a disciplinary hearing that resulted in the deprivation of good time credits was barred by *Heck*); *see also Wilkinson v. Dotson,* 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration.") (emphasis omitted). Conversely, a § 1983 claim that will not necessarily invalidate the underlying disciplinary action may proceed. *See Muhammad v. Close,* 540 U.S. 749, 754 (2004) (discussing "the mistaken view expressed in Circuit precedent that *Heck* applies categorically to all suits challenging prison disciplinary proceedings"); *see also Hooper v. County of San Diego*, 629 F.3d 1127, 1133 (9th Cir. 2011) (Fourth Amendment excessive force claim not *Heck*-barred because "[a] holding in [plaintiff's] § 1983 case that the use of the dog was excessive force would not negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of [plaintiff's] attempt to resist it.") (internal quotation omitted).

According to the RVR that formed the basis for Plaintiff's guilty finding and subsequent loss of credit, Plaintiff cussed, refused orders, struck Hultz with his elbow, and resisted the officer's efforts to restrain him, which required the officers to respond with physical force. Plaintiff, on the other hand, contends Hultz attacked him without provocation. *Compare* Dkt. No. 10 at 12–13 (Plaintiff was pulling out his index card to take notes when Hultz "violently assault[ed] plaintiff by hitting his hands . . . knocking the items to the ground," and as Plaintiff bent over to pick up the items, Hultz, without provocation, grabbed Plaintiff's throat and "squeezed.") *with* Dkt. No. 5 at 27 (RVR: Plaintiff "stated to me 'FUCK YOU'"; "I ordered [Plaintiff] to turn around and cuff up to which he refused"; and "[a]s I reached for [Plaintiff's] right wrist, he spun his body to his left striking me with his elbow on my left bicep area."). These versions of the events are fundamentally inconsistent. If Plaintiff prevailed on his claims that Hultz, unprovoked and

without any justification, used excessive physical force against Plaintiff and in retaliation for prior complaints, that result would necessarily invalidate the result of the disciplinary hearing (which was based on the finding that Plaintiff instigated the incident by refusing to obey commands and then assaulting Hultz) and resulting loss of credit. The Court, therefore, finds Plaintiff's excessive force and retaliation claims regarding the events that formed the basis of Plaintiff's loss of credit are barred by *Heck*. *See Burton v. Chenoweth*, No. 14-cv-2331-KJN-P, 2015 WL 7758476, at *3 (E.D. Cal. Dec. 2, 2015) (finding plaintiff's claim *Heck* barred where "Plaintiff's disciplinary conviction and his excessive force claim arise from the same incident, and the two versions of events are entirely inconsistent with one another"); *Hernandez v. Holman*, No. 17-cv-3946-SVW-GJS, 2017 U.S. Dist. LEXIS 94202, at *14 (C.D. Cal. June 19, 2017) (finding excessive force claim *Heck*-barred because "[i]f Plaintiff proved his sworn allegations in this case, then there was no Battery on a Peace Officer, [defendant] was not justified in using any force on Plaintiff, and the §3005(d)(1) conviction was wrongful").

Plaintiff's claims of excessive force that occurred after the incident that formed the basis of Plaintiff's loss of credit (i.e., after Plaintiff was handcuffed and taken to the gym), however, are not barred by *Heck*. Once restrained and taken to the gym, Plaintiff claims Defendants Pamplin and Strong, "slammed" Plaintiff "into a glass window" and "maliciously tightened the cuffs around the plaintiff's wrists" to restrict his blood flow. Dkt. No. 10 at 14–15. This excessive force claim is distinct from, and does not implicate, the conduct that resulted in Plaintiff's loss of credit. The Court, therefore, finds Plaintiff's claim of excessive force after he was restrained is not barred by *Heck*. *See Puckett v. Zamora*, 12-cv-00948-DLB-PC, 2015 WL 757330, at *4 (E.D. Cal. Feb. 23, 2015) (finding plaintiff's excessive force claim regarding an initial takedown barred by the favorable termination rule and dismissing that portion of the claim only; allowing plaintiff's "claims that once he was taken to the ground, Defendants used excessive force against him by physically beating him while he was restrained[,] . . . punched Plaintiff while he was on the ground," and that other defendants "stood by and watched as Plaintiff screamed for

help" to proceed); *Johnson v. Gonzalez*, No. 9-cv-01264-AWI-BAM-PC, 2014 WL 3940088, at *6 (E.D. Cal. Aug. 12, 2014) (finding "Plaintiff's excessive force claim regarding the initial takedown is barred by the favorable termination rule, and this portion of his claim must be dismissed"; however, plaintiff's allegations "that after the initial takedown, he was struck by Defendants . . . numerous times before losing consciousness" survived summary judgment), *report and recommendation adopted*, 2014 WL 4794968 (Sept. 25, 2014).

Plaintiff does not allege Hultz, Jaramillo, Joyner or Crespo were involved in the subsequent events at the gym. The Court, therefore, recommends granting Defendants' Motion to Dismiss Plaintiff's excessive force and retaliation claims against Hultz, Jaramillo, Joyner, and Crespo. The Court recommends denying Defendants' Motion as it relates to Plaintiff's claims of excessive force against Strong and Pamplin.

### C. Leave to Amend

"A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)). Here, the Court finds amendment of the *Heck* barred claims would be futile because they fail as a matter of law. The Court, therefore, recommends dismissing these claims without leave to amend. *See Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995) (affirming district court's ruling that an action barred by *Heck* had not yet accrued and, therefore, must be dismissed without prejudice so the plaintiff may reassert his § 1983 claims if he succeeds in invalidating the underlying conviction); *accord McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004) ("The district court did not err in denying leave to amend because amendment would have been futile. At the time of its ruling, . . . all plaintiffs could not state cognizable damages claims consistent with *Heck* . . . .").

//

//

## VI. CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) GRANTING Defendant's Motion to Dismiss Plaintiff's claims against Hultz, Jaramillo, Joyner, and Crespo; and (3) DENYING Defendants' Motion to Dismiss Plaintiff's post-restraint claims against Pamplin and Strong.

**IT IS ORDERED** that on or before **January 20, 2022**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties by **within seven (7) days of the filing of the objections**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated:  January 6, 2022

Honorable Daniel E. Butcher
United States Magistrate Judge